UNITED STATES DISTRICT
COURT SOUTHERN
DISTRICT OF FLORIDA
Ft. Pierce Division

Case No. 12-14333-CIV-MARTINEZ-LYNCH

CLASS ACTION

In re Digital Domain Media Group
Securities Litigation

_____ /

**DEFENDANT SINGERLEWAK LLP's MOTION TO DISMISS THE
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

Defendant, SINGERLEWAK LLP, (hereinafter "SingerLewak"), by and through the undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(6), and Rule. 7.1 of the Local Rules for the Southern District of Florida, hereby moves this Court for the entry of an Order Dismissing the Consolidated Amended Class Action Complaint (D.E. 57), and in support thereof states as follows:

**I.   BACKGROUND & RECITAL OF THE CLAIMS AND ALLEGATIONS AGAINST SINGERLEWAK IN THE COMPLAINT**

SingerLewak was engaged to be the auditor for Digital Domain Media Group (hereinafter "DDMG") on January 13, 2010. *See Compl. at ¶ 44*. As auditor for DDMG, SingerLewak audited the financial statements of DDMG for the calendar years 2009 and 2010. *Id. at ¶44*.

SingerLewak has been sued in the Consolidated Amended Class Action Complaint (hereinafter "the Complaint") based upon an alleged violation of 15 U.S.C. § 77k (a)(4) in connection with the registration statement that was filed in furtherance of DDMG's Initial Public Offering (hereinafter "IPO").[1]   DDMG's IPO occurred on

---

[1] SingerLewak was not a party to this lawsuit before the filing of the Consolidated Amended Class Action Complaint (D.E. 57).

November 21, 2011, and DDMG filed for bankruptcy on September 11, 2012. *Id. at* ¶ *1*.

The claim that is being asserted against SingerLewak in the Complaint, 15 U.S.C. § 77k (a)(4), states in pertinent part as follows:

> In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may, either at law or in equity, in any court of competent jurisdiction, sue—
>
> (4) every accountant … who has with his consent been named as having prepared or certified any part of the registration statement, or as having prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him. *Id.*

In furtherance of the claim against SingerLewak, the Complaint alleges that SingerLewak executed a "Consent of Independent Registered Public Accounting Firm," which was attached as Exhibit 23.1 to Amendment No.6 of DDMG's Registration Statement.  *See Compl. at* ¶ *119*.  This consent form allegedly stated as follows:

> We consent to the use in this Amendment No. 6 … of [DDMG] of our report dated May 13, 2011, relating to our audits of the consolidated financial statements, appearing in the Prospectus, which is part of this Registration Statement.
>
> We also consent to the reference to our firm under the caption "experts" in such Prospectus. *Id.*

The Complaint further alleges that the "Report of Independent Registered Public Accounting Firm" included in Amendment No. 6 stated:

> [SingerLewak] has audited the accompanying consolidated balance sheets of [DDMG] and subsidiaries [] as of December 31, 2010 and 2009 [], and the related consolidated statements of operations, stockholders'

>equity (deficit) and comprehensive income (loss), and cash flows for the year ended December 31, 2010, the period from January 7, 2009 [] to December 31, 2009 [] and for the nine months ended September 30, 2009 for Digital Domain [].
>
>                                          ***
>
>In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of Digital Domain Media Group, Inc. and subsidiaries as of December 31, 2010 and 2009 (Successor Entity), and the results of their operations and their cash flows for the year ended December 31, 2010 and the period from January 7, 2009 (Inception Date) to December 31, 2009 (Successor Entity) and for the nine months ended September 30, 2009 (Predecessor Entity) in conformity with U.S. generally accepted accounting principles. *Id*. at ¶ 118.

According to the Complaint, DDMG's financial condition was poor during the time period that SingerLewak audited DDMG's financial statements. *Id at ¶¶ 44. 123*. The Complaint alleges that SingerLewak omitted a material fact in the Prospectus and Amendment No.6 since SingerLewak purportedly gave false information to public investors that DDMG had resolved its negative cash flow issues. *Id. at ¶ 123*.

Significantly, the Complaint does not include any allegations that detail the substantive findings included in the two subject DDMG audits that were prepared by SingerLewak, which predated the IPO. *See Compl. generally*. Indeed, the Complaint is devoid of any mention of any specific findings, opinions, or conclusions included in the audits that were discernibly misleading or incorrect as of the dates that the subject audits were prepared. *Id*. The Complaint noticeably does not allege that SingerLewak violated any specific accounting standard or procedure in connection with the two subject DDMG audits. *Id.*

Case No. 12-14333-CIV-MARTINEZ-LYNCH

## II.    MOTION TO DISMISS STANDARD

Under the Federal Rules of Civil Procedure, a Plaintiff's Complaint may be dismissed for "failure to state a claim upon which relief can be granted." *Fed.R.Civ.P.* 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) requires that the Complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed.R.Civ.P.* 8(a)(2). To withstand a Motion to Dismiss, the Complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a Complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Twombly*, 550 U.S. at 570).

In deciding a Motion to Dismiss a Complaint for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6), the Court accepts as true only the non-conclusory factual allegations in the Complaint. *See Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir.2007). "While a Complaint attacked by a Rule 12(b)(6) Motion to Dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## III.    LEGAL AUTHORITY INTERPRETING 15 U.S.C. § 77k

Section 11 of the Securities Act of 1933 allows purchasers of a registered security to sue certain enumerated parties in a registered offering when allegedly false or misleading information is included in a registration statement. *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 381 (1983); *See also* 15 U.S.C. § 77k(a). In

pertinent part, 15 U.S.C. § 77k(a) states that "a person who acquires securities issued under an allegedly false or misleading registration statement may bring an action against an accountant ... who has with his consent been named as having prepared or certified any part of the registration statement, or as having prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him." *Id*.

Under § 11 of the Securities Act, a misrepresentation of fact is material if "an investor would attach importance to it in making an investment decision." *In re APAC Teleservice, Inc. Sec. Litig.*, 1999 WL 1052004 *9 (S.D.N.Y.1999); *See also Ho v. Duoyan Global Water, Inc.*, 887 F.Supp.2d 547 (S.D.N.Y 2012). An omission is deemed to be material "if there is a substantial likelihood that the 'disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of the information made available" (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, (1976)). A misstatement or omitted fact "is material if there is a substantial likelihood that a reasonable investor would consider it important in deciding how to act." *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 369 (3d Cir.1993) (citing *TSC Indus., Inc.,* 426 U.S. 438 at 449 (1976)).

An accountant may ordinarily avoid liability for any material untrue statement in a registration statements if the accountant complies with the Generally Accepted Accounting Standards (GAAS) when performing the audit, and if the accountant properly identifies any failure on the part of the audited company to conform with Generally Accepted Accounting Principles (GAAP). *See* Securities Act of 1933, §

11(a)(4), 15 U.S.C.A. § 77k(a)(4); *See also* 17 C.F.R. § 210.4–01(a)(1); *See also In re American Intern. Group, Inc. 2008 Securities Litigation*, 741 F.Supp.2d 511 (S.D.N.Y. 2010). In *Shalala v. Guernsey Memorial Hosp.*, 514 U.S. 87, 100 (1995), the United States Supreme Court explicitly noted that "financial accounting is not a science….(I)t addresses many questions as to which the answers are uncertain and is a process that involves continuous judgments and estimates." Furthermore, in *Shalala*, the United States Supreme Court noted that GAAP is the standard metric by which courts determine whether accounting statements are false or misleading, and GAAP is not "a single-source accounting rulebook," but rather "the conventions, rules, and procedures that define accepted accounting practice at a particular point in time." *Id. at 101.*; *See also In re Countrywide Financial Corp. Securities Litigation*, 588 F.Supp.2d 1132 (C.D.Cal. 2008).

      Finally, with respect to claims under § 11 of the Securities Act, an accountant cannot be held liable for parts of a registration statement that they are not named as having prepared or certified. *Id.*; *See also MacLean*, 459 U.S. at 386 n. 22,(1983). Section 11 of the Securities Act permits an action against an accountant based on material misstatements or omissions in a registration statement, but only as to those portions of the statement that purport to have been prepared or certified by the accountant." *See also In re Charles Schwab Corp. Securities Litigation,* 257 F.R.D. 534 (N.D.Cal.2009); *See also* 15 U.S.C. § 77k(a)(4). Accordingly, an accountant cannot be sued under 15 U.S.C. § 77k(a)(4) for anything but the components of the registration statement that he or she prepared and/or certified. *Id.*

Case 2:12-cv-14333-JEM   Document 70   Entered on FLSD Docket 10/01/2013   Page 7 of 19

Case No. 12-14333-CIV-MARTINEZ-LYNCH

**IV. THE ALLEGATIONS IN THE COMPLAINT ARE WOEFULLY INADEQUATE TO SUPPORT A CLAIM AGAINST SINGERLEWAK UNDER 15 U.S.C. § 77k(a)(4).**

The cause of action against SingerLewak outlined in the Complaint is purely based on innuendo, and is wholly devoid of substantive allegations, which are required to meet the pleading standard required under 15 U.S.C. § 77k(a)(4) and *Twombly*. Therefore, the Court should grant this Motion to Dismiss the Complaint.

Accepting the allegations in the Complaint as true for the sole purpose of this Motion to Dismiss, the 96 page Complaint undeniably paints the picture of a struggling company both before, and after, the DDMG IPO in November 2011. However, when focusing on the applicable time period, and the claims in the Complaint that are directed solely at SingerLewak, it is undeniable that the Plaintiffs' sole theory against SingerLewak is reduced to conclusory statements that lack substantive support. In essence, the theory against SingerLewak in the Complaint fails for the following reasons.

**(a) The Complaint does not allege that SingerLewak violated any applicable accounting standards when performing the subject DDMG audits.**

The Complaint is devoid of any allegations that SingerLewak violated any applicable accounting standards when performing the subject DDMG audits for the years 2009 and 2010, and without said allegations, the Complaint does not meet the pleading requirements that are necessary to assert a cause of action against an accountant under 15 U.S.C. § 77k(a)(4).

A case that involves similar claims and allegations, and also presents a similar liability theory against an accounting firm under 15 U.S.C. § 77k(a)(4) is *Dutton v. Harris Stratex Networks, Inc.*, 270 F.R.D. 171 (D.Del. 2010). In *Dutton*, shareholders in a

- 7 -
**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33256 - (305) 350-5300 - (305) 373-2294 FAX

company brought a putative class action against the company and various officers, the merging company, and the Ernst & Young accounting firm, alleging violations of the Securities Act. *Id.* The Plaintiffs in *Dutton* alleged a claim under 15 U.S.C. § 77k(a)(4) against Ernst & Young, which included strikingly similar allegations to the ones that are asserted against SingerLewak in this lawsuit. Particularly, the Plaintiffs in *Dutton* claimed as follows:

> "Ernst & Young was the auditor for Harris Stratex during the Class Period and the MCD prior to the merger and consented to being named in the Company's Registration Statement as a party that certified the audited financial statements contained or incorporated by reference therein. Ernst & Young's audit report dated November 21, 2006, incorrectly stated that its audits were performed in accordance with the standards of the Public Company Accounting Oversight Board (United States) and that the Company's (or MCD's) financial statements presented 'fairly, in all material respects the combined financial position of the [MCD] Division of Harris [ ] and subsidiaries at June 30, 2006 and July 1, 2005, and the combined results of their operations and their cash flows for each of the three years in the period ended June 30, 2006, in conformity with [GAAP]. *Id.* at 177, 178.

The Court in *Dutton* determined that these claims against Ernst & Young were "in the nature of "legal conclusions" and the "threadbare recitals of the elements of a cause of action" which are insufficient to withstand dismissal under *Twombly*." *Id. at 178.* In order to properly plead a cause of action against Ernst & Young under 15 U.S.C. § 77k(a)(4), the Court in *Dutton* declared that the Plaintiffs would need to allege which standards the accounting firm violated, how the statements made in the audit opinion were false or misleading at the time they were made, what deficiencies existed in the performance of the audit negating a reasonable basis for the audit opinion, and what aspects of the audit were negligently performed*. Id*.

Further, in the case *In re American Intern. Group, Inc. 2008 Securities Litigation*, 741 F.Supp.2d 511 (S.D.N.Y. 2010) (hereinafter "*AIG litigation*"), the Court noted that in order to state a claim against an accountant under 15 U.S.C. § 77k(a)(4), the Plaintiffs must allege which specific GAAP or GAAS violations occurred in connection with the information that was prepared by the accountant and included with the registration documentations. *Id. at 540-41*. In *AIG litigation*, the Plaintiffs alleged that the accounting firm Pricewaterhouse Coopers LLP (hereinafter "PWC") violated specified accounting standards by failing to properly report derivatives at fair value, and by failing to properly disclose concentrations of credit risk. *Id*. The Court in *AIG litigation* ruled that the Plaintiffs properly stated a cause of action against PWC since the Complaint included "certain identified GAAP principles" that PWC allegedly violated. *Id. at 541*; *See also In re Global Crossing, Ltd. Securities Litigation*, 322 F.Supp.2d 319, 338-343 (S.D.N.Y. 2004)(recognizing that the Plaintiffs Complaint included allegations of specific provisions of GAAP that were violated by the accounting firm). [2]

---

[2] The Court in *In re Global Crossing, Ltd. Securities Litigation* noted as follows when recognizing that the Plaintiffs were able to plead a cause action against Arthur Andersen under the 15 U.S.C. § 77k:

"First, plaintiffs argue that booking revenue from IRU sales up front, while amortizing the associated expenses, violated the fundamental principle of accounting that requires expenses and revenues associated with an asset to be "matched" – that is, booked during the same accounting period, see Statement of Financial Accounting Concepts No. 6 – as well as other principles of transparency and accuracy in reporting. ( See ¶ 718.) Second, plaintiffs assert in their amended Complaint that such leases should have been treated as contracts for real estate, rather than contracts for equipment, because the assets involved in an IRU lease, i.e. the fiber optic cable, are "integral to the underlying land." (¶¶ 151–154.) This categorization would have subjected such leases to the requirements of FASB 66, which governs *339 real-estate transactions as opposed to leases of equipment. FASB 66 would not allow revenue from such a lease to be booked under sales-type accounting unless title to the underlying land had passed (which is in effect what FIN 43 ultimately specified). Third, they assert that almost from its inception, GC was an outlier in the industry in its treatment of IRUs, and that its accounting practices were "the subject of increasing controversy" in the accounting and financial industries. (¶¶ 204–205.) They argue that to the extent that there was any uncertainty in the proper treatment of IRUs prior to the issuance of FIN 43, Andersen created that uncertainty through its overly aggressive accounting practices." *Id. at 338-339*.

Additionally, the Court in *In re Charles Schwab Corp. Securities Litigation,* 257 F.R.D. 534 (N.D.Cal. 2009) (hereinafter "*Charles Schwab*"), highlighted the necessity of identifying specific provisions under GAAP, GAAS, and/or the standards of the American Institute of Certified Public Accountants, which were allegedly violated by the accountant, when asserting a claim against an accountant under Section 11 of the Securities Act. *Id. at 557-562*. In *Charles Schwab*, the Court dismissed the claim against PWC based upon the fact that the Plaintiffs failed to plead that the allegedly misleading components of PWC's audit were the result of identified GAAP violations. *Id*.

Contradictory to the holdings in *Dutton*, *AIG litigation*, and *Charles Schwab*, the Plaintiffs' Complaint does not allege that SingerLewak violated any provision of GAAP, GAAS, and/or the standards of the American Institute of Certified Public Accountants, when performing the subject DDMG audits. Indeed, the Complaint leaves it up to the imagination of the reader to determine what specifically SingerLewak did wrong when performing its audits of DDMG.

Finally, the fact that the Complaint fails to allege the specific accounting standards that SingerLewak purportedly breached when performing the subject audits is particularly important since accountants may ordinarily avoid liability for any material untrue statement in registration statements if they conduct audits that comply with GAAS and identify any failures to conform with GAAP on the part of the audited company. *See* Securities Act of 1933, § 11(a)(4), 15 U.S.C. § 77k(a)(4); *See also* 17 C.F.R. § 210.4–01(a)(1); *See also AIG litigation*, 741 F.Supp.2d 511; See also In *Shalala v*, 514 U.S. at 100 (1995). Frankly, if SingerLewak fully complied with GAAS and GAAP when performing the subject audits, the Plaintiffs would not have a viable

claim against SingerLewak under 15 U.S.C. § 77k(a)(4), even if the Plaintiffs were able to prove that the subject audits contained inaccurate information.

In accordance with the holdings in *Dutton*, *AIG litigation*, and *Charles Schwab,* SingerLewak should not be forced to file an Answer to the Complaint unless and until: (a) the Plaintiffs allege more than legal conclusions in support of their claim against SingerLewak, and (b) the Plaintiffs identify which specific provisions of the applicable accounting standards that were allegedly violated by SingerLewak when performing the subject audits. Therefore, at the present time, the Complaint does not allege the required elements to assert a cause of action against SingerLewak under 15 U.S.C. § 77k(a)(4).

**(b) Besides broadly noting that the SingerLewak audited opinions for the years 2009 and 2010 were unqualified, the Plaintiffs fail to address the substance of the opinions and findings included in the subject audits that were misleading and/or inaccurate.**

In support of their cause of action against SingerLewak, the Plaintiffs solely allude to the unqualified audit opinions expressed by SingerLewak, and the fact that SingerLewak executed a "Consent of Independent Registered Public Accounting Firm," which was attached as Exhibit 23.1 to Amendment No.6 of DDMG's Registration Statement. *See Compl. at ¶ 119*. The Complaint does not include any allegations demonstrating substantive findings or opinions included in the subject SingerLewak audits. The Complaint fails to include any allegations of problems, inaccuracies, or irregularities with the DDMG 2009 and 2010 financial statements, which SingerLewak failed to discover during the audit process.

The primary claim against SingerLewak in the Complaint is that SingerLewak "omitted to state a material fact required to be stated therein or necessary to make the

statements therein not misleading because it did not include a going concern qualification." *See Compl. at ¶ 120.* The Complaint further claims that SingerLewak "gave false information to public investors that DDMG had resolved its negative cash flow such that it had the ability to continue as a going concern." *Id. at 123.* These claims are merely "legal conclusions" and the "threadbare recitals of the elements of a cause of action" which are insufficient to withstand dismissal. *See Dutton*, 270 F.R.D. at 178.

The Complaint noticeably does not distinguish what specific materially inaccurate information was included in DDMG's 2009 and 2010 financial statements, which SingerLewak did not reference in the two subject audits. The Complaint also fails to identify the specific accounting standards that, in this instance, allegedly required the 2009 and 2010 audits to include a going concern qualification. Additionally, the Complaint fails to allege how the statements made in the SingerLewak audit opinions were false or misleading at the time they were made, what deficiencies existed in SingerLewak's performance of the audit negating a reasonable basis for the audit opinion, and what aspects of SingerLewak's audits were negligently performed. *See Dutton,* 270 F.R.D. at 178; *See also AIG litigation*, 741 F.Supp.2d at 540-41; *See also Charles Schwab*, 257 F.R.D. at 557-562.

The mere allegation that SingerLewak failed to include a going concern qualification does not support a basis for liability under 15 U.S.C. § 77k(a)(4). The Plaintiffs would need to allege in specific detail a rationale as to why a going concern qualified opinion was required in relation to the subject SingerLewak audits. Since the

Plaintiffs fail to include such allegations in the Complaint, the Court must dismiss the Complaint against SingerLewak.

**(c) The Plaintiffs make the broad assumption that since PWC and Deloitte issued qualified audit opinions for Digital Domain Inc. in 2006 and 2008 respectively, DDMG's financial statement audits for the years 2009 and 2010 must have similarly required a qualified opinion.**

Without any factual support for the same, the Plaintiffs want to impose liability against SingerLewak because SingerLewak's financial statement audits of DDMG did not include the same or similar opinions that were reached by PWC and Deloitte years earlier in connection with a related company, Digital Domain Inc. First, the Complaint claims that in June 2006, PWC issued a qualified audit opinion for Digital Domain, Inc., which is notably a separate entity than DDMG. *See Compl. at ¶ 59*. Thereafter, in June 2009, Deloitte & Touche LLP ("Deloitte") submitted its auditors' report for Digital Domain, Inc., an allegedly affiliated entity to DDMG, which included a qualified opinion related to Digital Domain Inc.'s financial statements for the year 2008. *See Comp. at ¶ 58*. Subsequently, SingerLewak was retained to serve as the auditor for DDMG on January 13, 2010. *Id. at ¶ 44*. SingerLewak issued a non-qualified audit opinion pertaining to DDMG's financial statements for the year ended December 31, 2009, and for the year ended December 31, 2010. *Id at ¶¶ 44. 123*.

As a result of the qualified opinion audits prepared for Digital Domain Inc. for the year 2006 by PWC, and for the year 2008 by Deloitte, the Plaintiffs make the assumption that SingerLewak's audits for DDMG for the years 2009 and 2010 necessitated a qualified opinion as well. *Id. at ¶ 123* ("SingerLewak's failure to include a going concern qualification was an omission of material fact necessary to make its statements in the Prospectus and Amendment No.6 not misleading"). The Complaint

fails to provide a clear explanation as to how financial problems at Digital Domain Inc. in 2006 and 2008, as identified in the audits prepared by PWC and Deloitte, make it a requirement that SingerLewak's 2009 and 2010 audits for DDMG (not Digital Domain Inc.), include a going concern qualification. SingerLewak cannot be found liable solely based on the fact that its audited opinions for DDMG did not match the audited opinions of PWC and Deloitte for Digital Domain Inc., which were expressed by the separate accounting firms years earlier. Quite simply, the theory that SingerLewak faces liability solely as a result of the fact that its 2009 and 2010 audits related to DDMG did not express the same opinion as the Digital Domain Inc. audits from 2006 and 2008, is overwhelmingly speculative, and woefully insufficient to assert a cause of action under 15 U.S.C. § 77k(a)(4). Therefore, and as discussed in greater detail below, the PWC and Deloitte audits of Digital Domain Inc. are completely irrelevant to the cause of action against SingerLewak since, in the DDMG registration statement, SingerLewak did not certify or attest to the financial statements that were previously audited by PWC and Deloitte.

**(d) The majority of the allegations in the Complaint related to DDMG's financial troubles relate to time periods that were not opined on in the subject SingerLewak's audits.**

Allegations regarding DDMG's financial troubles before 2009, and subsequent to 2010, are completely irrelevant with respect to the cause of action against SingerLewak under 15 U.S.C. § 77k(a)(4). Significantly, 15 U.S.C. § 77k(a)(4) does not support a claim against SingerLewak for any matters except the parts of a registration statement that SingerLewak was named as having prepared or certified, which in this instance

solely involved the 2009 and 2010 audited financial statements for DDMG. *Id.*; *See also MacLean*, 459 U.S. at 386 n. 22,(1983); *See also Charles Schwab,* 257 F.R.D. 534.

In support of their cause of action against SingerLewak, the Plaintiffs allege that DDMG had serious cash flow issues at unidentified times before, and after, DDMG's IPO in November 2011, and the Plaintiffs highlight the fact that DDMG declared bankruptcy less than ten months after its IPO. *Id.* Quite simply, in connection with the claim against SingerLewak under 15 U.S.C. § 77k(a)(4), it does not matter whether DDMG had financial troubles before January 1, 2009, and it does not matter whether DDMG had financial problems subsequent to December 31, 2010; indeed, the only area of inquiry that may be considered with respect to the claims against SingerLewak is whether the 2009 and 2010 DDMG audits were prepared in accordance with the applicable standard of care. This is particularly important in this instance since the far majority of the allegations highlighting the financial issues at DDMG relate to time periods that must be ignored by the Court when ruling on the Plaintiffs' claim against SingerLewak.

When analyzing the claims against SingerLewak under 15 U.S.C. § 77k(a)(4), the Court may only focus on DDMG's financial condition as reflected in its financial statements for the years 2009 and 2010, which were audited by SingerLewak. SingerLewak may only be found liable under 15 U.S.C. § 77k(a)(4) for the parts of a registration statement that it was named as having prepared or certified. In this case, SingerLewak did not certify, or attest to, the financial condition of DDMG going forward in its 2010 audit of DDMG. Moreover, SingerLewak did not certify, or attest to, the financial condition of DDMG prior to January 2009. Therefore, with respect to

SingerLewak, all allegations pertaining to DDMG's financial problems that arose prior to January 2009, or subsequent to January 1, 2011, including all allegations regarding DDMG's financial deterioration subsequent to the IPO in November 2011, are irrelevant and cannot be used in support of the Plaintiffs' cause of action against SingerLewak.

## V. CONCLUSION

In conclusion, the Complaint as currently pled does not sufficiently state a cause of action against SingerLewak under 15 U.S.C. § 77k(a)(4). The majority of the claims in the Complaint relate to time periods that are completely irrelevant to the claims against SingerLewak, and when the Complaint attempts to focus its theory of liability against SingerLewak, the Plaintiffs resort to conclusory claims that stem from innuendo. In the end, the reader of the Complaint is left to guess what exact misrepresentations or omissions were made by SingerLewak in the registration statements. The Complaint also leaves it up to the reader's imagination to determine: (a) which accounting standards SingerLewak violated in connection with the subject audits, (b) how the statements made in the audit opinions were false or misleading at the time they were made, (c) what deficiencies existed in the performance of the subject audits negating a reasonable basis for the audit opinions, and (d) generally what aspects of the subject audits were negligently performed.

As a result of the aforementioned, and in accordance with the case law cited herein, it is overwhelmingly apparent that the Complaint fails to state a claim under 15 U.S.C. § 77k(a)(4) against SingerLewak. Therefore, the Court should grant this Motion to Dismiss the Consolidated Amended Class Action Complaint in favor of SingerLewak.

Case No. 12-14333-CIV-MARTINEZ-LYNCH

WHEREFORE, Defendant, SINGERLEWAK LLP, respectfully requests that the Court execute an Order dismissing all claims against SINGERLEWAK LLP in the Consolidated Amended Class Action Complaint, and granting any additional relief that the Court deems just and proper.

### CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of October, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List, either via transmission of Notices of Electronic Filing generated by CM/ECF or by electronic mail for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully Submitted,

/s/Cody German
Richard P. Cole (FBN: 186589)
Richard.Cole@csklegal.com
Jonathan Vine (FBN: 010966)
Jonathan.Vine@csklegal.com
Cody German (FBN: 058654)
Cody.German@csklegal.com
Cole, Scott & Kissane, P.A.
9150 South Dadeland Blvd., Suite 1400
Miami, FL 33156
Telephone: (305)350-5300
Facsimile: (305) 373-2294
*Attorneys for Defendant SINGERLEWAK LLP*

Case No. 12-14333-CIV-MARTINEZ-LYNCH

## SERVICE LIST

**Jay W. Eng, Esq.**
Berman DeValerio
3507 Kyoto Gardens Drive, Suite 200
Palm Beach Gardens, FL 33410
Telephone:   (561) 835-9400
Facsimile:    (561) 835-0322
Email:           jeng@bermandevalerio.com
*Attorney for Plaintiffs, MARK ST. CYR and PATRICOF FAMILY LIMITED PARTNERSHIP AND EDWARD NUSBLATT; and Consol Plaintiffs, ROBERT DZIEDZIC, CALEB R SHARP, and SUSAN L SHARP*

**Nicholas I. Porritt, Esq.**
Levi & Korsinsky, LLP
1101 30th Street, NW
Suite 115
Washington, DC 20007-3708
Email:           nporritt@zlk.com
*Attorney for Plaintiff, PATRICOF FAMILY LIMITED PARTNERSHIP AND EDWARD NUSBLATT*

**Brandon Thomas Grzandziel, Esq.**
**Joseph E. White, III, Esq.**
**Lester Rene Hooker, Esq.**
Saxena White PA
2424 N Federal Highway, Suite 257
Boca Raton, FL 33431
Telephone:   (561) 394-3399
Facsimile:    (561) 394-3382
Email:           bgrzandziel@saxenawhite.com
                    jwhite@saxenawhite.com
                    lhooker@saxenawhite.com
*Attorneys for Plaintiff, NATHAN WILSON*

**Patrick T. Egan, Esq.**
Berman DeValerio
One Liberty Square
Boston, MA 02109
Telephone:   (617) 542-8300
Email:           pegan@Bermandevalerio.com
*Attorney for Consol Plaintiffs, CALEB R SHARP and SUSAN L SHARP*

**Jeffrey M. Liggio, Esq.**
Liggio Benrubi
1615 Forum Place
Suite 3-B
West Palm Beach, FL 33401-2737
Telephone:   (561) 616-3333
Facsimile:    (561) 616-3266
Email:           jliggio@liggiolaw.com
*Attorney for Plaintiff, PATRICOF FAMILY LIMITED PARTNERSHIP AND EDWARD NUSBLATT*

**Laurence Matthew Rosen, Esq.**
The Rosen Law Firm
275 Madison Avenue
34th Floor
New York, NY 10016
Telephone:   (212) 686-1060
Facsimile:    (212) 202-3827
Email:           lrosen@rosenlegal.com
*Attorney for Plaintiff, FRANK CACELLA*

**Patricia I. Avery, Esq.**
**Joshua Wolf Ruthizer, Esq.**
Wolf Popper, LLP
845 Third Avenue
New York, NY 10022
Telephone:   (212) 451-9619 (Avery)
                    (212) 759-4600 (Ruthizer)
Facsimile:    (212) 486-2093 (Ruthizer)
Email:           pavery@wolfpopper.com
                    jruthizer@wolfpopper.com
*Attorneys for Consol Plaintiff, ROBERT DZIEDZIC*

**Samuel Joseph Salario, Jr., Esq.**
Carlton Fields
4221 W Boy Scout Boulevard
Suite 1000 – Corporate Center III
Tampa, FL 33607-5780
Telephone:   (813) 229-4337
Facsimile:    (813) 229-4133
Email:           ssalario@carltonfields.com
*Attorney for Defendant, JONATHAN F. TEAFORD*

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33256 - (305) 350-5300 - (305) 373-2294 FAX

Case No. 12-14333-CIV-MARTINEZ-LYNCH

**Avi Robert Kaufman, Esq.**
**Steven Jeffrey Brodie, Esq.**
Carlton Fields, P.A.
100 Southeast Second Street, Suite 4200
Miami, FL 33131
Telephone:  (305) 539-7326 (Kaufman)
            (305) 530-0050 (Brodie)
Facsimile:  (305) 530-0055 (Brodie)
Email:      akaufman@carltonfields.com
            sbrodie@carltonfields.com
*Attorneys for Defendant, JONATHAN F. TEAFORD*

**Brian Paul Miller, Esq.**
**Samantha J. Kavanaugh, Esq.**
Akerman Senterfitt
Suntrust International Center
1 SE 3rd Avenue
28th Floor
Miami, FL 33131-1714
Telephone:  (305) 374-5600
Facsimile:  (305) 374-5095
Email:      brian.miller@akerman.com
            samantha.kavanaugh@akerman.com
*Attorneys for Defendant, JOHN M. NICHOLS*


**John R. Loftus, Esq.**
**Julia B. Strickland, Esq.**
Stroock & Stroock & Lavan, LLP
2029 Century Park East
Suite 1800
Los Angeles, CA 90067-3086
Telephone:  (310) 556-5800
Facsimile:  (310) 436-7416 (Loftus)
            (310) 556-5959 (Strickland)
Email:      jloftus@stroock.com
            jstrickland@stroock.com
*Attorneys for Defendants, ROTH CAPITAL PARTNERS, LLC and MORGAN JOSEPH TRIARTISAN, LLC*

**Julie Prag Vianale, Esq.** (via Email)
Vianale & Vianale
2499 Glades Road, Suite 112
Boca Raton, FL 33431
Telephone:  (561) 392-4750
Facsimile:  (561) 392-4775
Email:      jvianale@vianalelaw.com
*Attorney for Movants, MARILYN LARSEN and FRANK LOVERSO*

**Tracy Ann Nichols, Esq.**
**Stephen Patrick Warren, Esq.**
Holland & Knight
701 Brickell Avenue
Suite 3000
Miami, FL 33131
Telephone:  (305) 374-8500
            Ext. 7717 (Nichols)
Facsimile:  (305) 789-7799
Email:      tracy.nichols@hklaw.com
            stephen.warren@hklaw.com
*Attorneys for Defendant, JOHN C. TEXTOR*

**Brendan Stuart Everman, Esq.**
**Brian C Frontino, Esq.**
Stroock & Stroock & Lavan LLP
200 S. Biscayne Boulevard, Suite 3100
Miami, FL 33131
Telephone:  (305) 358-9900 (Everman)
            (305) 789-9900 (Frontino)
Facsimile:  (305) 789-9302
Email:      beverman@stroock.com
            bfrontion@stroock.com
*Attorneys for Defendants, ROTH CAPITAL PARTNERS, LLC and MORGAN JOSEPH TRIARTISAN, LLC*

**Joseph Coates III, Esq.** (via Email)
Greenberg Traurig, LLP
777 south Flagler Drive
Suite 300 East
West Palm Beach, FL 33401
Telephone:  (561) 650-7900
Facsimile:  (561) 655-6222
Email:      coatesj@gtlaw.com
*Attorney to Defendants, PALM BEACH CAPITAL, PBC DIGITAL HOLDINGS, LLC, PBC DIGITAL HOLDINS II, LLC, PBC MGPEF DDH, LLC, PBC DDH WARRANTS, LLC and PBC GP III, LLC*

**Kenneth G. Gilman, Esq.** (via Email)
Gilman Law, LLP
3301 Bonita Beach Road, Suite 307
Bonita Springs, FL 34134
Telephone:  (239) 221-8301
Facsimile:  (239) 676-8224
Email:      kgilman@gilmanpastor.com
*Attorney for Movants, THE JACOBSON/KRAFT GROUP (Robert Jacobson and Bernard Kraft)*