UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO. 2:12-cv-14333-MARTINEZ/LYNCH

IN RE DIGITAL DOMAIN MEDIA GROUP, INC.
SECURITIES LITIGATION

_____/

**REPLY IN SUPPORT OF MOTION TO DISMISS
THE CONSOLIDATED AMENDED COMPLAINT BY DEFENDANTS
JOHN TEXTOR, JONATHAN TEAFORD, AND JOHN NICHOLS**

## <u>TABLE OF CONTENTS</u>

**I. PLAINTIFFS' ALLEGATIONS ABOUT DDMG'S ABILITY TO FUND OPERATIONS FAIL TO STATE A CLAIM.** ............................................................. 1

    **A. Plaintiffs' Failure To Address DDMG's Extensive Disclosures About Its Ability To Fund Operations Dooms Its Liquidity Allegations** ...................................... 1

    **B. DDMG's Forward-Looking Opinions About The Sufficiency Of Its Cash And Capital Are Not Actionable** ................................................ 2

    **C. DDMG's Optimistic Statements About Its Business Are Not Actionable** ..................... 5

    **D. The Individual Defendants Are Not Liable For SingerLewak's Decision Not To Include A Going Concern Qualification In The Registration Statement** ........................................................................................ 7

    **E. DDMG's Reliance On Government Grants Was Fully Disclosed** ................................. 8

    **F. Plaintiffs Do Not Provide Particularized Facts To Show That DDMG's Statements Concerning Strategic Alternatives Were False** ............................. 8

    **G. Defendants Do Not Concede Any Alleged Misstatements Concerning DDMG's Ability To Fund Operations** ................................................ 10

**II. THERE IS NO STRONG INFERENCE OF SCIENTER** ................................................. 10

    **A. The Cash Flow Reports Are Not Sufficient** ................................................ 10

    **B. Plaintiffs' Confidential Witness Allegations Are Not Sufficient** ................................. 11

    **C. Plaintiffs' Motive and Opportunity Allegations Are Not Sufficient** ............................ 12

    **D. Plaintiffs' Sale of Stock Allegations Are Not Sufficient** ................................................ 13

**III. NEITHER DDMG NOR THE INDIVIDUAL DEFENDANTS HAD A DUTY TO DISCLOSE THE PARENT COMPANY'S BANKRUPTCY** ............................ 13

**IV. THE INDIVIDUAL DEFENDANTS ARE NOT LIABLE FOR NOT DISCLOSING THE PBC LOAN SOONER** ........................................................... 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Borrow v. nView Corp.*,
  829 F. Supp. 828 (E.D. Va. 1993), *aff'd*, 27 F.3d 562 (4th Cir. 1994)....................................2

*Ehlert v. Singer*,
  245 F.3d 1313 (11th Cir. 2001) ...........................................................................................3, 5

*Exodus Comm's, Inc. Sec. Litig.*,
  2005 WL 1869289 (N.D. Cal. Aug. 5, 2005) ...........................................................................9

*Fecht v. Price Co.*,
  70 F.3d 1078 (9th Cir. 1995) ..................................................................................................9

*Findwhat Investor Group v. Findwhat.com*,
  658 F.3d 1282 (11th Cir. 2011) ..............................................................................................4

*Fisher v. Ross*,
  1996 WL 586345 (S.D.N.Y. Oct. 11, 1996) ..........................................................................13

*Gissin v. Endres*,
  739 F. Supp. 2d 488 (S.D.N.Y. 2010).....................................................................................3

*Harris v. Ivax Corp.*,
  182 F.3d 799 (11th Cir. 1999) ........................................................................................3, 4, 5

*Hubbard v. BankAtlantic Bancorp, Inc.*,
  625 F. Supp. 2d 1267 (S.D. Fla. 2008) ..................................................................................11

*In re American Apparel, Inc. S'holder Litig.*,
  2013 WL 174119 (C.D. Cal. Jan. 16, 2013) ............................................................................9

*In re Countrywide Fin. Corp. Sec. Litig.*,
  588 F. Supp. 2d 1132 (C.D. Cal. 2008) ...................................................................................7

*In re Homebanc Corp. Sec. Litig.*,
  706 F. Supp. 2d 1336 (N.D. Ga. 2010)..............................................................................3, 12

*In re Miva, Inc. Sec. Litig.*,
  511 F. Supp. 2d 1242 (M.D. Fla. 2007)...................................................................................4

*In re Pixar Sec. Litig.*,
  450 F. Supp. 2d 1096 (N.D. Cal. 2006) ...................................................................................6

*In re Royal Caribbean Cruises Ltd. Sec. Litig.*,
  2013 WL 3295951 (S.D. Fla. Apr. 19, 2013) ...............................................................5, 11, 13

*In re Sina Corp. Sec. Litig.*,
    2006 WL 2742048 (S.D.N.Y. Sept. 26, 2006) ........................................................................6

*In re Smith Gardner Sec. Litig.*,
    214 F. Supp. 2d 1291 (S.D. Fla. 2002) ................................................................................12

*In re Stone & Webster, Inc. Sec. Litig.*,
    217 F.R.D. 96 (D. Mass. 2003) ............................................................................................9

*In re Stone & Webster, Inc. Sec. Litig.*,
    253 F. Supp. 2d 102 (D. Mass. 2003) ...................................................................................9

*In re Stone & Webster, Inc. Sec. Litig.*,
    414 F.3d 187 (1st Cir. 2004) ............................................................................................2, 3

*In re Town Servs, Inc. Sec. Litig.*,
    184 F. Supp. 2d 1308 (N.D. Ga. 2001) ................................................................................4

*In re Williams Sec. Litig.*,
    339 F. Supp. 2d 1206 (N.D. Okla. 2003) .............................................................................4

*Mizzaro v. Home Depot, Inc.*,
    544 F.3d 1230 (11th Cir. 2008) ....................................................................................10, 12

*Monroe v. Hughes*,
    860 F. Supp. 733 (D. Or. 1991) ...........................................................................................7

*Solow v. Citigroup, Inc.*,
    2012 WL 1813277 (S.D.N.Y. May 18, 2012), *aff'd*, 508 F. App'x 81 (2d Cir. 2013) .............2

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ...........................................................................................................10

*Universal Express, Inc. v. SEC*,
    177 F. App'x 52 (11th Cir. 2006) .......................................................................................14

*Waterford Twp. Gen. Emps. Ret. Sys. v. BankUnited Fin. Corp.*,
    2010 WL 1332574 (S.D. Fla. Mar. 30, 2012) ......................................................................6

**Statutes**

15 U.S.C. §77k .......................................................................................................................7

15 U.S.C. § 78u-4 ................................................................................................................10

Colo. Rev. Stat. § 7-9-204(1)(a) ..........................................................................................14

I.   **PLAINTIFFS' ALLEGATIONS ABOUT DDMG'S ABILITY TO FUND OPERATIONS FAIL TO STATE A CLAIM.**

A.   **Plaintiffs' Failure To Address DDMG's Extensive Disclosures About Its Ability To Fund Operations Dooms Its Liquidity Allegations.**

Plaintiffs' attempt to cast their liquidity allegations as involving affirmative misrepresentations of fact (*e.g.,* Plaintiffs' Opposition ("Pl. Mem.") at 19) is belied by the Amended Complaint.  That pleading never alleges, for example, that DDMG said its capital resources were $X when they were in fact $Y.  Instead, the theory from Paragraph 1 is that DDMG's statements were misleading because they *failed to disclose* other facts about DDMG's capital resources.  (CAC ¶ 1 ("While the Company was touting itself …, it failed to disclose material problems….")).  This is proved by Plaintiffs' allegations about why the statements were misleading: "The statements … were materially false and misleading because they failed to disclose" facts about DDMG's liquidity.  (*E.g.*, *id.* ¶¶ 134, 138, 141, 143, 146, 150, 154, 158).

Plaintiffs' pursuit of alleged "failures to disclose" requires that they grapple with the facts DDMG actually disclosed about its liquidity and capital resources.  They fail to do so.  Our opening brief discussed at length DDMG's detailed reporting of significant revenue shortfalls, large working capital deficits, consistent operating losses, and dependence on grants.  (Individual Defendants' Motion to Dismiss ("Def. Mem.") at 4-5, 12-13, 15, 16, 21, 23-24 & n.8).  Plaintiffs make no mention of any of this, which is understandable.  DDMG's public filings disclosed the very facts Plaintiffs want to say were concealed – the details of DDMG's existing liquidity condition when it made the statements Plaintiffs complain about.

For example, Plaintiffs repeat as a mantra that DDMG failed to disclose that the Company was "insanely cash flow negative" and had a "substantial burn rate."  But they fail to mention that DDMG's IPO prospectus, Form 10-K, and each of the Form 10-Qs and quarterly earnings releases disclosed, among other facts on the topic DDMG's actual cash flows from operating businesses, investments, and financing.[1]  The 10-K for the year ended December 31,

---

[1] *See* Prospectus at F-10 (Ex. A); Form 10-K at 87 (Ex. B); Form 10-Q for quarter ended 9/30/11 at 4-5 (Ex. C); Form 10-Q for quarter ended 3/31/12 at 4-5 (Ex. D); Form 10-Q for quarter ended 6/30/12 at 4-5 (Ex. E); 12/21/11 Release at 12 (Ex. F); 4/2/12 Release (unnumbered) (Ex. G); 5/16/12 Release at 11 (Ex. H); 8/15/12 Release (unnumbered) (Ex. I).

2011 disclosed *negative* cash flows from operations of $42.2 million and that DDMG was net cash flow positive only because it had sold securities.  The 10-Q for the quarter ended March 31, 2012 disclosed *negative* cash flows from operations of $15.6 million and *negative* net cash flows of $27 million.  The 10-Q for the quarter ended June 30, 2012 disclosed *negative* cash flows from operations of $34.3 million and *negative* net cash flows of $22.9 million.

Plaintiffs do not allege or argue that this data was inaccurate.  Nor do they identify any concrete fact about DDMG's liquidity that was not disclosed and was necessary to make what DDMG did say not misleading.[2]  (*See infra* at §§ I.B through I.F).  Instead, Plaintiffs focus on matters of characterization – cash flow was "insanely negative," DDMG was "barely making payroll," and the California office was "losing money."  (Pl. Mem. at 13, 16).  This effort fails because "[t]he focus of the securities laws is on the disclosure of facts; characterizations of or conclusions drawn from those facts are matters that are left to the judgment of investors."  *Borrow v. nView Corp.*, 829 F. Supp. 828, 838 (E.D. Va. 1993) (internal quotation omitted), *aff'd*, 27 F.3d 562 (4th Cir. 1994); *Solow v. Citigroup, Inc.*, 2012 WL 1813277, at *4 (S.D.N.Y. May 18, 2012), *aff'd*, 508 F. App'x 81 (2d Cir. 2013).[3]

### B.   DDMG's Forward-Looking Opinions About The Sufficiency Of Its Cash And Capital Are Not Actionable.

***Forward-looking statements.***  Relying heavily on *In re Stone & Webster, Inc. Sec. Litig.*, 414 F.3d 187 (1st Cir. 2004), Plaintiffs say that because DDMG's predictive statements that its capital would be sufficient for stated periods of time included facts related to that prediction –

---

[2]   Plaintiffs assert that a statement in DDMG's 2011 10-K, filed in March 2012 that "[a]s of December 31, 2011, there has been no material change" in DDMG's use of IPO proceeds was false because the IPO proceeds were exhausted in February 2012.  (Pl. Mem. at 14, n.11).  But the 10-K presented financial results as of December 31, 2011 year-end, and Plaintiffs admit that it referred to the state of affairs "as of December 31, 2011" – well before Plaintiffs say the IPO proceeds were spent.  (*Id.*).

[3]   Continuing with the characterization theme, Plaintiffs tout an email from Defendant John Textor that purportedly remarked that "a train wreck is coming."  (Pl. Mem. at 2, 3, 5, 24, 34).  Plaintiffs provide no context for that comment, however, and do not explain if it was related to DDMG's liquidity or anything else the Amended Complaint challenges.  Moreover, the email was sent on February 10, 2010, nearly two full years before DDMG's IPO.  Plaintiffs make no effort to show that whatever conditions or concerns may have prompted Defendant Textor's comment in February 2010 continued to exist at the time of the statements in 2011 and 2012 that Plaintiffs challenge in the Amended Complaint.

2

*e.g.,* references to "existing cash and cash equivalents" or "re-financing of debt" – the statements do not qualify for treatment under the safe harbor for forward-looking statements.  (Pl. Mem. at 11-12).  In *Stone & Webster*, the First Circuit parsed through a mixed statement containing both present facts and a prediction about liquidity and refused to apply the safe harbor because the present fact component was alleged to have been misleading.  414 F. 3d at 213.

The Eleventh Circuit, however, has explicitly rejected this approach.  In this Circuit, when a statement lists both present facts and future projections, and the plaintiff challenges the statement "as a whole," "the entire list is due forward-looking treatment."  *Harris v. Ivax Corp.*, 182 F.3d 799, 806 (11th Cir. 1999); *accord Ehlert v. Singer*, 245 F.3d 1313, 1318 (11th Cir. 2001).  A plaintiff challenges a statement "as a whole" when "the factors underlying a projection or economic forecast include both assumptions and statements of known fact, and a plaintiff alleges that a material factor is missing…."  *Harris*, 182 F.3d at 807.

That is precisely what Plaintiffs do here: They take a statement that "we expect that the net proceeds of this offering and our existing cash and cash equivalents, in conjunction with other anticipated sources of revenue, will be sufficient … for the next 12 to 24 months" (*e.g.,* CAC ¶ 124), and allege that it was misleading because it "did not disclose" other material factors about DDMG's condition (*e.g., id.* ¶ 125).  Indeed, it would make no sense for Plaintiffs to challenge the half-statement "we expect that the net proceeds of this offering and our existing cash and cash equivalents" without the forward-looking prediction that those resources would be sufficient for some period of time.[4]  This Court should decline Plaintiffs' invitation to ignore this

---

[4]  This fact also distinguishes *Stone & Webster*.  There, the defendants represented that available capital was sufficient to fund its "anticipated needs," and the court interpreted "anticipated needs" as referring to present facts.   414 F.3d at 212-13.   The statements Plaintiffs challenge here do not include any representation as to "anticipated needs," and consist instead of a prediction that existing and expected sources of money would be sufficient for stated periods of time.  Such statements are forward-looking.  *See Gissin v. Endres*, 739 F. Supp. 2d 488, 505-06 (S.D.N.Y. 2010) (statement that "[b]ased on our current expectation of cash flows from operations and the cash and cash equivalent short-term investments … we feel we will be in a position to fund those capital investments" was forward-looking); *In re Homebanc Corp. Sec. Litig.*, 706 F. Supp. 2d 1336, 1354 (N.D. Ga. 2010) (statement that "[w]e presently believe our current cash balances, funds available under financing arrangements and cash flows from operations … will be sufficient …  for the next 12 months" was forward-looking).

Circuit's law that mixed statements like this are forward-looking in their entirety.[5]

Plaintiffs' assertion that the risk warnings accompanying DDMG's forward-looking statements were "boilerplate" (Pl. Mem. at 12-13) is make-weight.  DDMG was pursuing a growth strategy that required it to spend large amounts of capital quickly with the attendant risks that it would not be able to generate sufficient revenue to cover those expenses.  (*See* CAC ¶¶ 56-68).  The challenged SEC filings described this strategy and warned that (1) the strategy was expensive; (2) DDMG historically failed to make enough money to cover its expenses, with large losses as the inevitable result; (3) revenue from operations was not sufficient to fund its expenses, and DDMG thus required additional funds from external sources; (4) it had no committed external sources of funds; and (5) the government grants were highly important.  (Def. Mem. at 13-14).  DDMG coupled these warnings with historical results showing mushrooming expenses and working capital deficits and negative cash flow issues.  (*Id.* at 12-13).  Given those disclosures, no one could have reasonably believed that DDMG's liquidity and capital resources were not an area of substantial risk.  That is because, like the cases cited in our opening brief,[6] the warnings here were tailored to DDMG's specific circumstances and "warned of risks of a significance similar to those actually realized."  *Harris*, 182 F.3d at 807.

**Opinions.**  Plaintiffs cite *In re Miva, Inc. Sec. Litig.*, 511 F. Supp. 2d 1242, 1257-59 (M.D. Fla. 2007) and *In re Williams Sec. Litig.*, 339 F. Supp. 2d 1206, 1225-27 (N.D. Okla. 2003) to show that a statement beginning with "we believe" is not an opinion if supported by

---

[5]  Plaintiffs cite *Findwhat Investor Group v. Findwhat.com*, 658 F.3d 1282, 1299 (11th Cir. 2011), but that case dealt with pure statements of present fact ("we employ an integrated system … that continually monitors traffic quality" and "we enforce strict guidelines … to ensure the quality of traffic") that had no forward-looking component.  Plaintiffs also cite *In re Town Servs, Inc. Sec. Litig.*, 184 F. Supp. 2d 1308 (N.D. Ga. 2001), but that case  involved a statement concerning "potential" problems with a computer system, made without mentioning the historical fact that those problems had already occurred, whereas here the historical facts concerning DDMG's liquidity problems were disclosed at length.

[6]  *See* Def. Mem. at 12, 14-15 (*citing In re Royal Caribbean Cruises Ltd. Sec. Litig.*, 2013 WL 3295951, at *13 (S.D. Fla. Apr. 19, 2013); *Rescue Mission of El Paso, Inc. v. K-Sea Trans. Partners L.P.*, 2013 W.L. 3087078, at *16 (D.N.J. June 14, 2013); *Gissin*, 739 F. Supp. 2d at 508-09; *Homebanc*, 706 F. Supp. 2d at 1357-58).  Plaintiffs seek to distinguish these cases because DDMG did not say that it was "insanely cash flow negative" and was "facing a substantial burn rate'" (Pl. Mem. at 13 & n.9), but none of those cases involved such pejorative disclosures.  (*See also supra* at § I.A.).

"statements of purported fact."  (Pl. Mem. at 14).  Neither case says that: Both assumed that statements beginning "we believe" (among many others) were actionable without considering the legal requirement that opinions be shown to be (1) not genuinely held by the speaker and (2) not supported by any reasonable basis.  (Def. Mem. at 16-17).  An assumption is not a reasoned decision.  As the cases cited in our brief hold, statements like those here are opinions, challenged because DDMG's capital did not last through 2012 as opined.  (*Id.* at 16-17).  Plaintiffs do not and cannot allege that those opinions were both subjectively and objectively false, especially in light of DDMG's lengthy disclosures about its capital position.  (*Id.* & n.8).

## C.  DDMG's Optimistic Statements About Its Business Are Not Actionable.[7]

*Forward-looking statements.*  Again ignoring Eleventh Circuit decisions, Plaintiffs cite a Ninth Circuit case to say that DDMG's statements about its "positive outlook" and "strong visibility," being "pleased to remain on plan as we grow our business," and having "mitigated the financial risk of [its] growth" were not forward-looking because they concerned present facts – *e.g.*, being "on plan".  (Pl. Mem. at 16-17).  The Eleventh Circuit, however, has held that any "statement about … a company whose truth or falsity is discernable only after it is made" is forward-looking, even if phrased in the present tense.  *Harris*, 182 F.3d at 805.  The court in *Harris* held that statements that "the challenges unique to this period in our history are now behind us" and "our fundamental business and strategies remain intact" were forward-looking because their truth could only be ascertained in the future.  *Id.* at 804-05.  Again in *Ehlert*, the Eleventh Circuit held that a statement that "[t]he Company is devoting significant resources to the development of enhancements to existing products" was forward-looking, reasoning that "[t]he fact that it is a present tense statement does not render it non-forward-looking."  245 F.3d at 1318 n.5.  Plaintiffs fail to show that the statements here – the optimism of which can only be

---

[7] Plaintiffs take issue with a statement that DDMG's share repurchase program was a "sound investment" (Pl. Mem. at 14 n.11) – a forward-looking statement of optimism if there ever was one.  Plaintiffs' assertion that Defendant Textor's statement that a debt financing "also" provided DDMG with "capital to pursue additional feature film co-production opportunities" was false (*id.*) is bereft of any citation to any allegation in the Amended Complaint showing that none of the debt proceeds were never used to pursue such opportunities.

judged right or wrong based on the future course of events – are any different.

       **Statements of optimism.**  Plaintiffs assert that DDMG's statements that it was "on plan," had a "positive outlook," and had a "very, very good burn rate" are not inactionable statements of corporate optimism.  (Pl. Mem. at 16, 17).  Vague statements like these are no different than the statements in *In re Royal Caribbean Cruises Ltd. Sec. Litig.*, 2013 WL 3295951, at \*5, 12 (S.D. Fla. Apr. 19, 2013) that the company was experiencing "healthy demand" for its cruises and that "early indications [for financial results] are encouraging."  Nor are they any different from the statements in *Waterford Twp. Gen. Emps. Ret. Sys. v. BankUnited Fin. Corp.*, 2010 WL 1332574, at \*8 (S.D. Fla. Mar. 30, 2012), that a bank underwrote its loans in accord with credit standards that were "strict, "stringent," and "conservative."  Yet in both cases, this Court held that the subject statements were inactionable statements of optimism.  So too here.

       **Burn rate.**  Plaintiffs say that statements by Defendant Textor about DDMG's burn rate in a December 20, 2011 conference call, reproduced in Paragraph 135 of the Amended Complaint, were false.  (Pl. Mem. at 15).  Paragraph 135 is a block quote that runs for nearly two pages, and the Amended Complaint only highlights one statement as false: "So the timing doesn't always work out, but we are receiving more money than we've laid out."  (CAC ¶ 135).  Plaintiffs ignore that this statement is explained and qualified in the immediately preceding sentence: "So the burn rate that you see in things like unutilized labor, as you see in this release, our total unutilized labor is less than we received in cash grants."  (*Id.*)  The statement Plaintiffs criticize was thus a statement that DDMG was receiving more in cash grants than it was spending on unutilized labor.  Plaintiffs do not identify any facts in the Amended Complaint to show the contrary.  The remaining statements identified in the Plaintiffs' brief are not identified as false in the Amended Complaint; they are just lumped into a two-page-long block quote without explanation.  Under the PSLRA, that does not suffice to allege securities fraud.  *See In re Sina Corp. Sec. Litig.*, 2006 WL 2742048 (S.D.N.Y. Sept. 26, 2006) (complaint containing "large block quotes taken from public statements" dismissed under PSLRA); *In re Pixar Sec. Litig.*, 450 F. Supp. 2d 1096, 1100-01 (N.D. Cal. 2006) (dismissing complaint containing "extensive block quotes" as insufficient to plead securities fraud).

**D.  The Individual Defendants Are Not Liable For SingerLewak's Decision Not To Include A Going Concern Qualification In The Registration Statement.**

As part of their Section 11 claim, Plaintiffs allege that "SingerLewak's failure to include a going concern qualification was materially misleading and the Individual Defendants are liable for this omission because they had reasonable grounds to believe that the audit opinion without the qualification was misleading."  (Pl. Mem. at 33).  As Plaintiffs acknowledge, however, a company's officers and directors "may reasonably rely on auditors' statements, absent red flags...."  *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1175 (C.D. Cal. 2008).  *See* 15 U.S.C. §77k(b)(3)(C).   Here, Plaintiffs' mere second-guessing of SingerLewak's professional judgment is not enough to overcome the presumption of reliance.   The case Plaintiffs cite in their Opposition – *Howard v. Chanticleer Holdings, Inc.* – is inapposite.  (Pl. Mem. at 34).   There, the plaintiffs successfully alleged that the auditor's opinion certified that "the bulk of the company's operations had been audited when, in reality, they had not."  *Howard*, 2013 WL 5236641, at *6 (S.D. Fla. Sept. 17, 2013).   The court found that the director-defendants knew or should have known that the audit opinion, based on audits that never took place, was misleading and refused to allow the reasonable reliance defense.  *Id.*

Here, by comparison, Plaintiffs do not allege that SingerLewak did not conduct complete audits.   Instead, Plaintiffs point to earlier going concern qualifications issued by Deloitte and PricewaterhouseCoopers (PwC).  (CAC ¶¶ 58-59).   In their brief, however, Plaintiffs tacitly acknowledge that Deloitte and PwC audited Digital Domain, the California company, and not DDMG, the Florida company.  (*See* Pl. Mem. at 1) ("In 2006 and 2009, the Company's *predecessor* entity had received 'going concern' warnings from two *prior* auditors....") (emphasis added).   Moreover, the Deloitte and PwC qualifications were issued three years apart, which suggests there were years in between when Deloitte and PwC did not issue going concern qualifications.   Those facts hardly rise to the level of a red flag.

The nature of a going concern qualification also effectively precludes a company officer from second guessing either its inclusion or omission from a auditor's report.   As the court explained in *Monroe v. Hughes*, 860 F. Supp. 733, 740 (D. Or. 1991), the accounting standards

"emphasize that *any* going concern qualification is discretionary with the auditor."  Thus, short of an admission by the auditor that it omitted a going concern qualification even though it believed one was necessary, a company officer would have no way of knowing that it was unreasonable to rely on the auditor's report.  This may explain why Plaintiffs did not cite a single case in their brief that involved claims that a third party should be held liable for an auditor's decision not to include a going concern qualification in its report.

### E.   DDMG's Reliance On Government Grants Was Fully Disclosed.

Plaintiffs' brief runs away from the Amended Complaint's allegation that government grants were the "sole support for the operations of DDMG" and does not dispute that DDMG in fact disclosed that the grants were very important to its ability to fund operations.  (*Compare* Def. Mem. at 20-21 *with* Pl. Mem. at 17-18).  Plaintiffs do assert that that the statements about the grants failed to disclose that "the Company had always been operating in the 'red' and that without the proceeds from these grants, the Company would not have been able to pay payroll" (Pl. Mem. at 17), but that is wrong.  DDMG's IPO prospectus, 10-K filing, and each of the 10-Q filings and quarterly earnings releases cited in the Amended Complaint disclosed: (1) revenue DDMG obtained from operations; (2) revenue DDMG obtained from government grants; (3) the expenses DDMG incurred; and (4) those expenses attributable to payroll.[8]  Plaintiffs do not allege or argue that this information was inaccurate in any way.  DDMG was not required to append a pejorative characterization to these facts – "we're in the red, folks" – simply because these Plaintiffs think that would have been a better way to disclose them.  (*See supra* at § I.A.).

### F.   Plaintiffs Do Not Provide Particularized Facts To Show That DDMG's Statements Concerning Strategic Alternatives Were False.

Plaintiffs' burden under the PSLRA is to plead particularized facts supporting their allegation that DDMG's August 1 and 15 statements about strategic alternatives were misleading when made because DDMG was certain to default on the minimum cash covenant on August 20 and file for bankruptcy on September 11.  Yet they fail to provide particulars like dates, amounts,

---

[8]   *See* Ex. A at 67-68; Ex. B at 47, 50-54; Ex. C at 30-40; Ex. D at 25-30; Ex. E at 26-32; Ex. F at 3, 5, 9; Ex. G at 3, 5 & unnumbered; Ex. H at 4-5, 10; Ex. I at 4 & unnumbered.

or facts that rule out any possibility that DDMG could have avoided default and bankruptcy. (Def. Mem. at 22).  The fact that DDMG announced on August 13 that it had retained Wells Fargo Securities, LLC "to assist the Company with its evaluation of strategic alternatives" (Form 10-Q for quarter ended 6/30/12 at 22 (Ex. J)), and the fact that the Company raised $5 million as late as August 16 shows that default and bankruptcy were not certain (Def. Mem. at 22).

Thus, Plaintiffs are forced to rely on allegations that sometime "in August 2012," the PBC Defendants contacted a restructuring firm, which later decided that "DDMG had little choice but to declare bankruptcy."  (Pl. Mem. at 18).  These allegations say nothing about *when*, in relation to the August 1 and 15 statements, the restructuring firm was retained or formed its opinions or *what specific facts* it uncovered showing that bankruptcy was unavoidable. Plaintiffs' provocative conclusion that the company was "insanely cash flow negative" is no substitute for particularized facts showing that default and bankruptcy were foregone conclusions at the time DDMG discussed its strategic alternatives.  *See In re American Apparel, Inc. S'holder Litig.*, 2013 WL 174119, at *31 (C.D. Cal. Jan. 16, 2013) (holding that allegations of confidential witness who believed bankruptcy was imminent were insufficient absent particular facts supporting that belief); *Exodus Comm's, Inc. Sec. Litig.*, 2005 WL 1869289, at *39 (N.D. Cal. Aug. 5, 2005) (holding that fact that company consulted with bankruptcy advisors did not establish that optimistic statements were misleading).

As a result, Plaintiffs are left with the assertion that the "shortness of time" between the statements and the default/bankruptcy gives rise to a claim for securities fraud.  (Pl. Mem. at 18). The only case they cite – *Fecht v. Price Co.*, 70 F.3d 1078 (9th Cir. 1995) – predated the PSLRA and did not apply its pleading standards.  Under the PSLRA, this kind of fraud-by-hindsight does not state a claim.  *See, e.g., Exodus Comm's*, 2005 WL 1869289, at *38 (reiterating holding that "the mere temporal proximity between Hancock's statements and Exodus's bankruptcy was insufficient to raise an inference of falsity or scienter under the PSLRA").[9]

---

[9]  Plaintiffs correctly point out that *In re Stone & Webster, Inc. Sec. Litig.*, 253 F. Supp. 102 (D. Mass. 2003), cited in our initial brief, was reversed on appeal.  Our research and cite-check did not detect the reversal because Westlaw does not show any reversal or any direct history at all from that opinion.  The reversal would only be detected if one found a subsequent district court opinion denying leave to amend,

### G.     Defendants Do Not Concede Any Alleged Misstatements Concerning DDMG's Ability To Fund Operations.

Plaintiffs' argument that our initial brief "concede[s] the falsity" of certain statements because it did not expressly identify each and every one of them is an effort to dodge the merits. (Pl. Mem. at 9).   Plaintiffs cite no authority that a motion to dismiss is required to devote its limited space to each and every allegation in a 93-page, 267-paragraph complaint.  All of the statements Plaintiffs say were "conceded" are said to have been misleading because DDMG failed to disclose facts about its liquidity and capital resources.  (*See, e.g.,* CAC ¶¶ 133-34).  That point, and its application to every alleged misstatement in the Amended Complaint, is argued in the initial brief.  (Def. Mem. at § 1.A.6).

## II.     THERE IS NO STRONG INFERENCE OF SCIENTER.

Plaintiffs are required to plead particularized facts giving rise to a strong inference of scienter as to each defendant.  15 U.S.C. § 78u-4(b)(2); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 308 (2007).  This inference of scienter "must be more than merely plausible or reasonable."  *Tellabs,* 551 U.S. at 314.  It must be cogent and "at least as compelling as any plausible opposing inference one could draw.…"  *Id.* at 324; *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1238-39 (11th Cir. 2008).

The only compelling inference that can be drawn from the facts in this case is that, unfortunately, a start-up company did not succeed.  Period.  Plaintiffs' opposing inference of securities fraud cannot past muster in light of DDMG's public disclosures, which highlighted its large operating losses, working capital deficits, and the use of government grants to fund operations.  Plaintiffs' scienter allegations illustrate the challenges of DDMG's start-up business, rather than supporting any inference of a fraud perpetrated by the Individul Defendants.

### A.     The Cash Flow Reports Are Not Sufficient.

Plaintiffs' allegations regarding the cash flow reports received by the Individual Defendants are not sufficient to support a strong inference of scienter because they do not

---

*In re Stone & Webster, Inc. Sec. Litig.*, 217 F.R.D. 96 (D. Mass. 2003), which does show as having been reversed.  We nevertheless apologize for the error.

contain sufficient factual detail regarding the reports.  Omissions and ambiguities in a complaint count against inferring scienter.  *Mizzaro*, 544 F.3d at 1238-39 (citing *Tellabs*, 551 U.S. at 321-22).  Indeed, Plaintiffs' allegations raise more questions than answers.

CW5's allegations regarding the cash forecasts, which allegedly demonstrated that DDMG "had been having cash flow issues," have no temporal context and cannot be isolated to the class period.  *See* CAC ¶¶ 102, 181; *Hubbard v. BankAtlantic Bancorp, Inc.*, 625 F. Supp. 2d 1267, 1286 (S.D. Fla. 2008).  Moreover, the investing public was well aware of DDMG's cash flow issues.  Plaintiffs fail to specifically allege what conflicting information was contained in the alleged internal cash forecasts that would support an inference of a mental state embracing an intent to deceive, manipulate or defraud.  And while CW6 alleges that "Textor received reports from the California offices and the Florida office that showed revenues and spending," this purported former employee also fails to provide any additional factual detail regarding the reports.  (CAC ¶¶ 65, 182).  What did those reports say about revenues and spending, specifically?  How does that information conflict with DDMG's public filings?  Finally, CW4's contention that reports including "information on cash flow, labor, actual costs, profits and losses and capital spending" were prepared in California and sent to Florida, similarly fails to provide the level of particularized factual detail necessary to satisfy the PSLRA.  Every company generates some form of internal financial reports.  Plaintiffs do not demonstrate why DDMG's cash flow reports support any inference of fraud.  The PSLRA demands much, much more.

Plaintiffs essentially allege that the Individual Defendants reviewed internal cash flow reports that purportedly showed that DDMG was having cash flow issues during an unspecified time period; but all of this was disclosed in SEC filings.  No reasonable person could conclude that the existence of and review of internal financial reports, with nothing more, gives rise to a "cogent" inference that DDMG knowingly or recklessly misrepresented its liquidity to the investing public, especially when compared to the "opposing inference" to be drawn from the start-up DDMG having reported operating losses and working capital deficits in the millions of dollars.

### B.    Plaintiffs' Confidential Witness Allegations Are Not Sufficient.

11

Plaintiffs' confidential witness allegations are entitled to no weight because they fail to "'unambiguously provide[] in a cognizable and detailed way the basis of the whistleblower's knowledge.'"   *Royal Caribbean*, 2013 WL 3295951, at *22 (internal quotation omitted). Plaintiffs bear the burden of "fully describ[ing] the foundation or basis of the confidential witness's knowledge."   *See* Pl. Mem. at 28; *Mizzaro*, 544 F.3d at 1240.   Their description of these witnesses is conclusory, anecdotal, and fails to include critical context and details:

- CW4's allegations are entitled to no weight because Plaintiffs have failed to carry their burden of demonstrating CW4's proximity to the alleged offending conduct.  Based in California, CW4 has no first-hand knowledge of what the Individual Defendants were doing in Florida.

- CW5's only allegation of moderate substance – that the reports showed DDMG "had been having cash flow issues" – is a statement of opinion that is not indicative of scienter absent specific factual allegations that the Individual Defendants shared this opinion. *See Homebanc*, 706 F. Supp. 2d at 1350.  No such allegations were made.

- CW6's allegations are entitled to no weight because they lack any particularized facts to support the basis of CW6's alleged knowledge.   How, exactly, would CW6 have firsthand knowledge of what reports Textor received if this individual did not report to Textor?

Because Plaintiffs have failed to support their confidential witnesses' allegations with sufficient factual foundation, these allegations should be given no weight in the scienter analysis.

### C.    Plaintiffs' Motive and Opportunity Allegations Are Not Sufficient.

Plaintiffs' generalized "motive and opportunity" allegations are insufficient to meet the PSLRA's pleading requirements of stating with particularity facts giving rise to a strong inference that each separate defendant acted with scienter with respect to each act or omission alleged.   *See In re Smith Gardner Sec. Litig.*, 214 F. Supp. 2d 1291, 1303 (S.D. Fla. 2002). Plaintiffs' brief confirms – as it must – that motive-and-opportunity allegations alone are plainly insufficient under the PSLRA to establish scienter.   (Pl. Mem. at 28-29).   Plaintiffs, however, claim that their motive and opportunity allegations must be viewed collectively with their other factual allegations and that they all give rise to a strong inference of scienter.   *See id.* Unfortunately for Plaintiffs, none of their other scienter allegations give rise to an inference of scienter.   Plaintiffs' attempt to amalgamate their deficient scienter allegations in hopes that the

sum total of these insufficient parts would be sufficient under the PSLRA is unavailing.

      **D.**      **Plaintiffs' Sale of Stock Allegations Are Not Sufficient.**[10]

Plaintiffs' argument that the allegations concerning Defendant Textor's sale of DDMG stock to Eastside Holdings, Inc. evidence scienter is belied by its lack of factual support.  Stock sales are only indicative of scienter if they are shown to be unusual or suspicious based on (1) the amount and percentage of shares sold; (2) the timing of the sales; and (3) the consistency between the sales and the insider's prior trading history.  *Royal Caribbean*, 2013 WL 3295951, at *17.  The Amended Complaint falls short of this mandate by omitting the percentage of his overall shares Textor sold, or showing the sale was "dramatically out of line with prior trading practices."  *Id.* (citing *Hubbard*, 625 F. Supp. 2d at 1287) (holding that allegations regarding stock sales do not give rise to an inference of scienter where plaintiffs "simply allege[d] the amounts sold")  As such, this single stock sale cannot support an inference of scienter.

**III.**     **NEITHER DDMG NOR THE INDIVIDUAL DEFENDANTS HAD A DUTY TO DISCLOSE THE PARENT COMPANY'S BANKRUPTCY.**

Plaintiffs allege in the Amended Complaint that DDMG was required to, but did not, disclose in its Registration Statement that a company called "The Parent Company" filed for bankruptcy in 2008.  (CAC ¶ 116).  This is an odd allegation because none of DDMG's officers served as officers of The Parent Company.   In their brief, Plaintiffs posit that disclosure nevertheless was required under SEC Item 401 because The Parent Company was related to BabyUniverse, Inc., of which Textor and Teaford had served as officers.  Plaintiffs are mistaken. Item 401 states that disclosure is required if a "petition under the Federal bankruptcy laws ... was filed by ... any corporation of which [the issuer's directors or officers] was an executive officer at or within two years before the time of such filing."  17 C.F.R. § 229.401(f)(1). But the plain terms of Item 401 do not extend to companies that are related to, or affiliated with, the bankrupt company.  *See Fisher v. Ross*, 1996 WL 586345, at *9 n.6 (S.D.N.Y. Oct. 11, 1996) (explaining that Item 401 only "requires disclosure of a bankruptcy petition filed against a company 'of

---

[10]  Neither Teaford nor Nichols sold any shares of DDMG stock during the class period.  *See* Form 4's, attached as Exhibit N to the Def. Mem.

which [the director] was an executive officer'").

Plaintiffs also argue that disclosure was "required because BabyUniverse filed a bankruptcy petition on its own behalf."  (Pl. Mem. at 20).  This is a case of mistaken identity. The original BabyUniverse entity was acquired in 2007, at which time Textor and Teaford resigned.  That entity (a Florida corporation) merged into The Parent Company (a Colorado corporation), with The Parent Company as the surviving entity.  *See* The Parent Company's Form 8-A/A filed Jan. 9, 2008 ("BabyUniverse merged with and into Parent with Parent surviving the merger....") (attached as Exh. P to Def. Mem.); Colorado Sec. of State Statement of Merger (Ex. K).[11]  BabyUniverse was the non-surviving entity and, therefore, ceased to exist. *See* Colo. Rev. Stat. § 7-9-204(1)(a) ("Every merging entity merges into the surviving entity and the separate existence of every merging entity ceases.").  Around the same time, The Parent Company incorporated a new subsidiary in Colorado called BabyUniverse, Inc.  *See* Decl. of Michael J. Wagner In Support of First Day Motions at ¶ 9 (explaining that after the BabyUniverse-eToys Direct merger, "a *new subsidiary* with the name BabyUniverse, Inc. was incorporated.") (Ex. L) (emphasis added); *see also* BabyUniverse, Inc. Articles of Incorporation filed in Colorado (Ex. M).  It was this new entity that filed for bankruptcy in December 2008 with The Parent Company and its other affiliates.  Because Textor and Teaford never served as officers of that newly-formed entity, DDMG was not required to disclose its bankruptcy filing.

## IV.    THE INDIVIDUAL DEFENDANTS ARE NOT LIABLE FOR NOT DISCLOSING THE PBC LOAN SOONER.

Plaintiffs contend that it was a material omission not to disclose the PBC Loan sooner because, according to Plaintiffs, "then members of the Class would have learned that demand for the IPO was so weak that Textor needed to borrow $10 million to ensure demand was fulfilled...."  (Pl. Mem. at 21).  This argument falls flat because any weakness in the demand for DDMG's IPO was publicly disclosed on November 18, 2011 (the date of the IPO), when DDMG

---

[11]  "A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment.  Public records are among the permissible facts that a district court may consider."  *Universal Express, Inc. v. SEC*, 177 F. App'x 52, 53-54 (11th Cir. 2006).

explained in the Free Writing Prospectus that Textor and Teaford would likely purchase up to one-quarter of the IPO shares.  Whether they carried out their purchases with their own money or borrowed money reveals nothing to investors about the demand for IPO shares.

Plaintiffs also contend that if the PBC Loan had been disclosed sooner, other investors would have learned that Palm Beach Capital "believed that DDMG common stock was worth so little that 9 times the number of shares purchased was still insufficient to secure the loan with two properties valued at over $10 million." *Id.*  However, all of Textor's DDMG shares – including those purchased in the IPO – were subject to a six-month lock-up agreement.  *See* DDMG Prospectus, at 152 (Ex. A).  Moreover, the 8.7 million DDMG shares that Textor acquired before the IPO were "restricted securities as defined in Rule 144 under the Securities Act," and were subject to resale limitations.  *See id.* at 151 ("Shares Eligible for Future Sale").  Thus, it is no surprise that the PBC Loan was collateralized by two properties owned by Textor.

Even if the PBC Loan had been material, Plaintiffs have not pled facts giving rise to a strong inference that Textor intended to deceive shareholders about it.  Plaintiffs argue that the "Complaint alleges more than a 'technical violation'" of Schedule 13D, yet Plaintiffs devote the remainder of that paragraph to summarizing and block-quoting the disclosure and timing requirements of Schedule 13D.  (Pl. Mem. at 26).  If there had been an intent by the Individual Defendants to hide from investors that "demand for the IPO was weak," Textor and Teaford would not have timely disclosed that they purchased approximately 25% of the IPO shares.  The fact that they did so – combined with the fact that Textor subsequently disclosed the PBC Loan – gives rise to a competing and more compelling inference that there was no intent to deceive.[12]

WHEREFORE, for all the foregoing reasons and those set forth in the Motion to Dismiss, the Individual Defendants respectfully request that Plaintiffs' Consolidated Amended Class Action Complaint be dismissed in its entirety, with prejudice.

---

[12]  Plaintiffs suggest that the Individual Defendants somehow "waived any arguments" that the omission of the PBC Loan in the Offering Documents and Dec. 2011 Form 10-Q are violations of the Exchange Act.  (Pl. Mem. at 21 n.19.)  There is no such waiver.  The arguments raised by the Individual Defendants concerning the PBC Loan apply across the board.

Dated: December 9, 2013

Respectfully submitted,

**HOLLAND & KNIGHT**

By: /s/ Tracy A. Nichols
Tracy A. Nichols, Esq.
Florida Bar No:
tracy.nichols@hklaw.com
Stephen P. Warren, Esq.
Florida Bar No:
stephen.warren@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, FL  33131
Telephone:  (305) 374-8500
Facsimile:  (305) 789-7799

*Counsel for Defendant John C. Textor*

**CARLTON FIELDS, P.A.**

By: /s/ Samuel J. Salario
Steven J. Brodie, Esq.
Florida Bar No:
sbrodie@carltonfields.com
Miami Tower
100 S.E. Second Street, Suite 4200
Miami, FL  33131-2113
Telephone:  (305) 530-0050
Facsimile:  (305) 530-0055

Samuel J. Salario, Jr., Esq.
Florida Bar No:
ssalario@carltonfields.com
4221 W. Boy Scout Boulevard, Suite 1000
Tampa, FL  33607-5780
Telephone:  (813) 223-7000
Facsimile:  (813) 229-4133

*Counsel for Defendant Jonathan F. Teaford*

**AKERMAN LLP (f/k/a AKERMAN
SENTERFITT)**

By: /s/ Brian P. Miller
Brian P. Miller, Esq.
Florida Bar No: 980633
brian.miller@akerman.com
Samantha J. Kavanaugh, Esq.
Florida Bar No: 0194662
samantha.kavanaugh@akerman.com
One Southeast Third Avenue, 25th Floor
Miami, FL  33131-1714
Telephone:  (305) 374-5600
Facsimile:  (305) 374-5095

*Counsel for Defendant John M. Nichols*

16

## <u>CERTIFICATE OF SERVICE</u>

On December 9, 2013, I coordinated the electronic filing of the foregoing document and any exhibits with the Clerk of the Court using CM/ECF.  I certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List either via transmission of Notices of Electronic Filing generated by CM/ECF or by first class U.S. mail for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: <u>/s/ Stephen P. Warren</u>
        Attorney

## SERVICE LIST

Jay W. Eng, Esq.
Kyle DeValerio
BERMAN DEVALERIO
3507 Kyoto Gardens Drive, Suite 200
Palm Beach Gardens, FL  33410
Tel:  561-835-9400
Fax:  561-835-0322
E-mail:  jeng@bermandevalerio.com
E-mail:  kdevalerio@bermandevalerio.com

Patrick T. Egan, Esq.
*Admitted Pro Hac Vice*
BERMAN DEVALERIO
One Liberty Square
Boston, MA  02109
Tel:  617-542-8300
Fax:  617-542-1194
E-mail:  pegan@bermandevalerio.com

Patricia I. Avery, Esq.
*Admitted Pro Hac Vice*
Joshua W. Ruthizer, Esq.
Marian P. Rosner, Esq.
WOLF POPPER LLP
845 Third Avenue
New York, NY  10022
Tel:  212-759-4600
Fax:  212-486-2093
E-mail:  pavery@wolfpopper.com
E-mail:  jruthizer@wolfpopper.com
E-mail:  mrosner@wolfpopper.com

Nicholas I. Porritt, Esq.
Thomas M. Gottschlich, Esq.
*Pro Hac Vice Motion to be Filed*
LEVI & KORSINSKY LLP
1101  30th Street, NW, Suite 115
Washington DC  20007
Tel:  202-524-4290
Fax:  202-333-2121
E-mail:  nporritt@zlk.com
*Lead Counsel for Court-Appointed Lead Plaintiffs Caleb R. and Susan L. Sharp, Robert Dziedzic, Patricof Family Limited Partnership and Edward Nusblatt*

Julie Prag Vianale
Email: jvianale@vianalelaw.com
VIANALE & VIANALE
2499 Glades Road, Suite 112
Boca Raton, FL 33431
Telephone:  (561) 392-4750
Facsimile:  (561) 392-4775
*Counsel for Movants Marilyn Larsen and Frank LoVerso*

Kenneth G. Gilman
Email:  kgilman@gilmanpastor.com
GILMAN LAW LLP
3301 Bonita Beach Road, Suite 307
Bonita Springs, FL 34134
Telephone: (239) 221-8301
Facsimile: (239) 676-8224
*Counsel for Movants The Jacobson/Kraft Group (Robert Jacobson and Bernard Kraft)*

Brandon Thomas Grzandziel
Email: bgrzandziel@saxenawhite.com
Lester Rene Hooker
Email: lhooker@saxenawhite.com
Joseph E. White, III
Email: jwhite@saxenawhite.com
SAXENA WHITE PA
2424 N Federal Highway, Suite 257
Boca Raton, FL 33431
Telephone:  561-394-3399
Facsimile:  561-394-3082
*Counsel for Plaintiff Nathan Wilson*

Laurence Matthew Rosen
Email: lrosen@rosenlegal.com
THE ROSEN LAW FIRM
275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone:  212-686-1060
Facsimile: 212-202-3827
*Counsel for Plaintiff Frank Cacella and Movants the Digital Domain Investor Group (James and Suzanne Mason, Eric Michael Harkins and Arthur M. Packard)*

Richard P. Cole
Richard.Cole@csklegal.com
Jonathan Vine
Jonathan.Vine@csklegal.com
Cody German
Cody.German@csklegal.com
COLE, SCOTT & KISSANE, P.A.
9150 South Dadeland Blvd., Suite 1400
Miami, FL 33156
Telephone: (305)350-5300
Facsimile: (305) 373-2294
*Counsel  for Defendant SingerLewakLLP*

Brian C. Frontino, Esq.
Email: bfrontino@stroock.com
Brendan S. Everman, Esq.
Email: beverman@stroock.com
STROOCK & STROOCK & LAVAN LLP
200 South Biscayne Blvd. Suite 3100
Miami, FL 33131-5323
Tel: (305) 358-9900
Fax: (305) 789-9302

John R. Loftus, Esq.
Email: jloftus@stroock.com
Julia B. Strickland, Esq.
Email: jstrickland@stroock.com
STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, CA 90067-3086
Tel: (310) 556-5800
Fax: (310) 556-5959
*Counsel for Roth Capital Partners, LLC and
Morgan Joseph TriArtisan, LLC*