**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

**Case No. 2:12-CV-14333-MARTINEZ-LYNCH**

IN RE DIGITAL DOMAIN MEDIA GROUP,
INC. SECURITIES LITIGATION

**PLAINTIFFS' MOTION FOR AND INCORPORATED MEMORANDUM OF LAW IN
SUPPORT OF AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF
LITIGATION EXPENSES, AND SERVICE AWARDS TO PLAINTIFFS**

**<u>TABLE OF CONTENTS</u>**

MOTION ...................................................................................................................... 1

MEMORANDUM OF LAW ......................................................................................... 1

I.      PRELIMINARY STATEMENT ....................................................................... 1

II.     STATEMENT OF FACTS ................................................................................ 4

III.    THE REQUESTED ATTORNEYS' FEE AND REIMBURSEMENT OF
        EXPENSES ARE APPROPRIATE IN THIS ACTION .................................... 4

        A.      The Time and Labor Required ............................................................... 6

        B.      The Economics Involved in Prosecuting the Action and the Contingent
                Nature of the Representation and The Preclusion of Other Employment ............. 8

        C.      The Novelty and Difficulty of the Questions Involved, The Skill Requisite
                to Perform the Legal Services Properly, and the Results Obtained ...................... 10

        D.      The Customary Fee For Similar Cases ................................................. 12

        E.      The Requested Attorneys' Fees Are Consistent With Contingent Fee
                Arrangements Negotiated in Non-Class Litigation ................................ 12

        F.      Class Counsel's Expenses Were Reasonably and Necessarily Incurred and
                Should be Reimbursed ......................................................................... 14

        G.      Plaintiffs Should be Granted Service Awards From the Settlement Fund
                Pursuant to the PSLRA ........................................................................ 15

IV.     CONCLUSION ................................................................................................. 17

## **TABLE OF AUTHORITIES**

### **Cases**

*Behrens v. Wometco Enters., Inc.*,
    118 F.R.D. 534 (S.D. Fla. 1988),
    *aff'd.,* 899 F.2d 21 (11th Cir 1990)................................................................. 4, 6, 9

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)................................................................................................... 4

*Camden I Condo. Ass'n v. Dunkle*,
    946 F.2d 768 (11th Cir.. 1991) ..................................................................... passim

*In re Checking Account Overdraft Litig.*,
    830 F. Supp. 2d 1330 (S.D. Fla. 2011) ................................................................ 13

*Cheney v. Cyberguard Corp.*,
    No. 98-6879-CIV-Gold/Simonton (S.D. Fla. May 7, 2004)...................................... 5

*In re Clarus Corp. Sec. Litig.*,
    No. 00-cv-2841-CAP (N.D. Ga. Jan. 6, 2005)........................................................ 5

*In re Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ................................................................................. 12

*Copper Liquor, Inc. v. Adolph Coors Co.*,
    684 F.2d 1087 (5th Cir. 1982),
    *overruled in part on other grounds,*
    *Int'l Woodworkers v. Champion Intern.*, 790 F.2d 1174 (5th Cir. 1986) ................... 6

*In re CV Therapeutics, Inc.*,
    No. C 03-3709 SI,
    2007 U.S. Dist. LEXIS 98244 (N.D. Cal. Apr. 4, 2007) ....................................... 15

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
    130 F.R.D. 366 (S.D. Ohio 1990).......................................................................... 16

*Francisco v. Numismatic Guar. Corp. of Am.*,
    No. 06-61677-CIV,
    2008 WL 649124 (S.D. Fla. Jan. 31, 2008) .......................................................... 10

*Fuller v. Imperial Holdings*,
    No. 11-81184-CIV-MARRA (S.D. Fla. Dec. 16, 2013)......................................... 16

*Garza v. Sporting Goods Props., Inc.*,
   No. CIV. A. SA–93–CA–108,
   1996 WL 56247 (W.D. Tex. Feb. 6, 1996)........................................................................ 10

*Gevaerts v. TD Bank, N.A.*,
   No. 11:14-cv-20744-RLR,
   2015 U.S. Dist. LEXIS 150354 (S.D. Fla. Nov. 5, 2015)................................................ 14, 16

*Gutter v. E.I. Dupont De Nemours & Co.*,
   No. 95-2152-CIV-GOLD (S.D. Fla. May 30, 2003) ............................................................ 5

*In re HealthTronics Surgical Servs., Inc. Sec. Litig.*,
   No. 03-CV-2800-CC (N.D. Ga. Dec. 1, 2005) .................................................................... 5

*Huberman v. Tag-It Pacific Inc.*,
   No. CV 05-07352 (C.D. Cal. Dec. 7, 2009) ...................................................................... 16

*In re Immune Response Secs. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007)............................................................................ 16

*Kirchoff v. Flynn*,
   786 F.2d 320 (7th Cir. 1986) ........................................................................................... 13

*Legg v. Lab. Corp. of Am. Holdings*,
   No. 14-61543-CIV-ROSENBERG,
   2016 U.S. Dist. LEXIS 122695 (S.D. Fla. Feb. 18, 2016) ................................................ 16

*Mashburn v. Nat'l Healthcare, Inc.*,
   684 F. Supp. 679 (M.D. Ala. 1988) ................................................................................... 7

*McPhail v. First Command Fin. Planning, Inc.*,
   No. 05cv179-IEG-JMA,
   2009 U.S. Dist. LEXIS 26544 (S.D. Cal. Mar. 30, 2009) ................................................. 16

*Morgan v. Public Storage*,
   No.: 14-cv-21559-Ungaro/Otazo-Reyes,
   2016 U.S. Dist. LEXIS 54937 (S.D. Fla. Mar. 10, 2016)................................................. 14

*N.Y. State Ass'n for Retarded Children, Inc. v. Carey*,
   711 F.2d 1136 (2d Cir. 1983) ............................................................................................ 6

*New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
   234 F.R.D. 627 (W.D. Ky. 2006) ..................................................................................... 15

*In re Omnivision Techs.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................................................................ 16

*In re Opteum Sec. Litig.*;
   No. 07-14278-CIV-GRAHAM (S.D. Fla. Dec. 14, 2010).........................................................5

*Pinto v. Princess Cruise Lines, Ltd.*,
   513 F. Supp. 2d 1334 (S.D. Fla. 2007) ............................................................................ 8, 12

*In re Profit Recovery Group Int'l, Inc. Sec. Litig.*,
   No. 00-CV-1416-CC (N.D. Ga. May 26, 2005) ...................................................................5

*Ressler v. Jacobson*,
   149 F.R.D. 651 (M.D. Fla. 1992) ............................................................................... 8, 10, 12

*In re RJR Nabisco, Inc. Sec. Litig.*,
   No. 88 Civ. 7905,
   1992 WL 210138 (S.D.N.Y. Aug. 24, 1992)......................................................................13

*In re Shell Oil Refinery*,
   155 F.R.D. 552 (E.D. La. 1993) .........................................................................................10

*In re Sunbeam Sec. Litig.*,
   176 F. Supp. 2d 1323 (S.D. Fla. 2001) .......................................................................... 4, 5, 9

*In re Sunterra Corp. Sec. Litig.*,
   No. 00-cv-79-Orl-28B (M.D. Fla. Apr. 26, 2005) ...............................................................5

*In re Synovus Fin. Corp.*,
   No. 1:09-cv-01811-WCO,
   2014 U.S. Dist. LEXIS 190227 (N.D. Ga. Nov. 18, 2014) .................................................16

*In re Transkaryotic Therapies, Inc. Sec. Litig.*,
   No. 03-10165-RWZ (D. Mass. June 3, 2008)......................................................................15

*Varljen v. H.J. Meyers & Co., Inc.*,
   No. 97 Civ. 6742(DLC),
   2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000)......................................................................16

*Walter Energy, Inc. Sec. Litig.*,
   No. 12-CV-00281-VEH (N.D. Al. May. 3, 2016) ...............................................................5

*Waters v. Int'l Precious Metals Corp.*,
   190 F.3d 1291 (11th Cir. 1999) ...........................................................................................5

*Wolff v. Cash 4 Titles*,
   No. 03-22778-CV,
   2012 WL 5290155 (S.D. Fla. Sept. 26, 2012),

*report and recommendation adopted by*
No. 03-22778-CIV, 2012 WL 5289628 (S.D. Fla. Oct. 25, 2012) .............................. 5, 8, 9, 13

*In re Xcel Energy, Inc.*,
364 F. Supp. 2d 980 (D. Minn. 2005) .................................................................................... 15

## Statutes

15 U.S.C. § 77z-1 ............................................................................................................ 8, 15, 16

15 U.S.C. § 78u-4 ........................................................................................................... 8, 15, 16

## Other Authorities

5 Newberg on Class Actions, § 15:73 (5th ed. 2015) ................................................................. 13

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2015 Review and Analysis* (Cornerstone Research 2016) .......................................................................... 2

Svetlana Starykh & Stefan Boettrich*, Recent Trends in Securities Class Action Litigation: 2015 Full-Year Review* (NERA Economic Consulting Jan. 25, 2016)....................................... 2

## MOTION

Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), S.D. Fla.Local Rule 7.1, and the Private Securities Litigation Reform Act ("PSLRA"), Court-appointed Class Representatives the Patricof Family Limited Partnership, Edward Nusblatt, and Robert Dziedzic (collectively, "Plaintiffs" or "Class Representatives") respectfully move this Court for entry of an order (1) awarding attorneys' fees from the Settlement Fund to Court-appointed Class Counsel Levi & Korsinsky LLP, Wolf Popper LLP, and Berman DeValerio LLP (collectively, "Class Counsel"); (2) reimbursing Class Counsel's litigation expenses from the Settlement Fund; and (3) awarding Plaintiffs $5,000 each as reimbursement for their reasonable time and expenses, including lost wages, directly relating to the representation of the Class, from the Settlement Fund pursuant to the PSLRA.

## MEMORANDUM OF LAW

## I.      PRELIMINARY STATEMENT[1]

This Settlement of the consolidated securities fraud class action relating to the collapse of Digital Domain Media Group ("DDMG"), totaling $5,500,000 in cash, represents an arm's-length compromise wrought from over four years of litigation and extensive settlement negotiations. Class Counsel has devoted substantial time and advanced tens of thousands of dollars in expenses

---

[1] Capitalized terms not otherwise defined herein have the meaning set forth in the Stipulation of Settlement filed with the Court on June 17, 2016 and the Declaration of Co-Lead Counsel in Support of (A) Lead Plaintiffs' Motion For Final Approval Of Class Action Settlement And Plan Of Allocation And Final Certification Of The Class; (B) Co-Lead Counsel's Motion For An Award Of Attorneys' Fees And Reimbursement Of Expenses; and (C) Service Awards To Plaintiffs ("Co-Lead Counsel Declaration" or "Co-Lead Counsel Decl.").

1

over four years prosecuting this case.[2]  Class Counsel believes that the results obtained for the

Class are excellent given the substantial risks and uncertainty in this case.  *First*, when this action

was brought DDMG was embroiled in complex bankruptcy proceedings.  DDMG's D&O Policies

– the primary source available to the Class for recovery –  were quickly being eroded by defense

costs and were being sought by competing claimants with claims vastly exceeding the available

funds.  Co-Lead Counsel Decl. ¶¶ 11, 19-22, 25.  *Second*, the $5.5 million recovery here amounts

to a recovery (before the deduction of attorneys' fees, costs and expenses, as approved by the

Court) of 42.2% of the maximum recognized loss per share.  *Id.* ¶¶ 3, 26.  This recovery is

dramatically higher than the median recoveries reported in similar securities class action

settlements which range from 11.4% to 18.9%.[3]  *Third*, Lead Plaintiffs faced significant hurdles

in the pending action.  Motions to dismiss this case filed by Defendants asserting that there were

no cognizable misstatements or omissions under federal securities laws and that Defendants lacked

the requisite *scienter* to impose liability were pending.  Even if the motions to dismiss were denied.

Lead Plaintiffs faced years of additional challenges in obtaining class certification and surviving

motions for summary judgment.

   Given the results achieved, the complexity and amount of work involved, the skill and

expertise of Class Counsel and the risks counsel undertook, Class Counsel believes that this case

---

[2]  *See* Co-Lead Counsel Decl.; Lead Plaintiffs' Motion For Final Approval Of Class Action Settlement And Plan Of Allocation And Final Certification Of The Class With Incorporated Memorandum Of Law (Plaintiffs "Final Approval Motion") is submitted contemporaneously herewith.

[3] *See* Svetlana Starykh & Stefan Boettrich, *Recent Trends in Securities Class Action Litigation: 2015 Full-Year Review*, at 33 (NERA Economic Consulting Jan. 25, 2016) ("NERA Report") (median 18.9% recovery in cases with investor losses below $20 million); Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2015 Review and Analysis*, at 8-9 (Cornerstone Research 2016) ("Cornerstone Report") (median 11.4% recovery in cases with investor losses below $50 million), attached to Co-Lead Counsel Decl., Exhibits. 10-11, respectively.

warrants an award of thirty-three percent (33%) of the Settlement Fund (approximately one million eight hundred and fifteen thousand dollars ($1,815,000)), a percentage frequently awarded in settlements of similar securities class action litigation.  Indeed, an award of 33% percent will represent a *negative* multiplier, far less than the approximately $2,589,313.50 lodestar of Class Counsel.  This means that Class Counsel will receive no multiplier for the risk of non-recovery, the complexity and difficulty of this matter and the specialized skill required, and quality of opposing counsel.

In light of (i) the result obtained for the Settlement Class, (ii) the amount and quality of work done by Class Counsel over the past four years, (iii) the risks involved in this litigation, (iv) the complexity of the action, and (v) the size of the fee in relation to the Settlement achieved, the fee request of 33% of the Settlement Amount is fair and reasonable under the standards applied in this Circuit.  The notice distributed to Class Members ("Notice") advised that Class Counsel would seek an award of up to 33% of the Settlement Fund and, as of October 12, 2016, no Settlement Class Member has objected to such an award.  The requested expenses also are reasonable, as they are of the type that are regularly reimbursed by courts in this Circuit, and were necessary for the effective prosecution of the action.  The Notice advised that Class Counsel would seek reimbursement of their out-of-pocket expenses not to exceed $90,000, plus interest, and, as of October 12, 2016, no Class member has objected to the reimbursement of expenses or to compensatory awards to Lead Plaintiffs.[4]

---

[4] It is important to note that the actual expense request of $74,606 is lower than the $90,000 amount referenced in the Notice.

3

For the reasons set forth below, Class Counsel believes that the requested fee award, the reimbursement of expenses, and the awards to each of the Lead Plaintiffs, are appropriate, fair and reasonable.

## II.    STATEMENT OF FACTS

Plaintiffs respectfully refer the Court to the recitation of the facts and procedural background in Plaintiffs Final Approval Motion and the Co-Lead Counsel Declaration.   The recitation of facts in the Co-Lead Counsel Declaration is incorporated herein by reference.

## III.    THE REQUESTED ATTORNEYS' FEE AND REIMBURSEMENT OF EXPENSES ARE APPROPRIATE IN THIS ACTION[5]

The award of attorneys' fees in this class action is governed by the common fund doctrine. The United States Supreme Court has recognized that when a common fund is successfully established for the benefit of a class, the cost of litigation and reward for counsel's efforts should be spread among the common fund's beneficiaries.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("A litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole.").  The Eleventh Circuit has adopted the percentage of the fund method to compensate attorneys who create a common fund in class action cases.[6]  *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).

---

[5] Unpublished opinions cited herein are attached to the Co-Lead Counsel Decl. as Exhibit 9 (Compendium of Unpublished Opinions).

[6] In adopting the percentage of the fund method of awarding attorneys' fees, the *Camden* court rejected the so-called "lodestar" approach, which involves multiplying the attorneys' reasonable hours expended by reasonable hourly rates and then multiplying that figure by a discretionary "multiplier" figure to reflect in the circumstances of the particular litigation.  *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988), *aff'd.,* 899 F.2d 21 (11th Cir. 1990) ("The range of lodestar multiples in large and complicated class actions runs from a low of 2.26,… to a high of 4.5," and "[m]ost lodestar multiples awarded in cases like this are between 3 and 4.").

4

"There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001) (*quoting Camden*, 946 F.2d at 774). "[A]n upper limit of 50% of the fund may be stated as a general rule[,]" although "[t]he majority of common fund fee awards fall between 20% to 30% of the fund." *Sunbeam*, 176 F. Supp. 2d at 1333 (*quoting Camden*, 946 F.2d at 774-75).

In this case, Class Counsel seeks an attorneys' fee award of 33% of the Settlement Fund. This is well within the range of reasonableness set forth in *Camden* and appropriate given the excellent recovery and significant risks of the instant case, including the fact that Class Counsel's actual lodestar is far greater than the fee requested.[7]

The *Camden* Court enumerated the following factors as ones the Court may consider in determining the percentage of a fund to be applied to each case: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the

---

[7] *Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291, 1294-98 (11th Cir. 1999) (sustaining district court award of 33 1/3% of recovery as attorneys' fees from a $40 million settlement fund); *Walter Energy, Inc. Sec. Litig.*, No. 12-CV-00281-VEH (N.D. Al. May. 3, 2016) (awarding 33% of $25 million settlement amount); *In re Opteum Sec. Litig.*; No. 07-14278-CIV-GRAHAM (S.D. Fla. Dec. 14, 2010) (awarding 33⅓% of settlement fund); *Wolff v. Cash 4 Titles*, No. 03-22778-CV, 2012 WL 5290155, at *1 (S.D. Fla. Sept. 26, 2012) (awarding requested of 33%), *report and recommendation adopted by* No. 03-22778-CIV, 2012 WL 5289628 (S.D. Fla. Oct. 25, 2012); *In re HealthTronics Surgical Servs., Inc. Sec. Litig.*, No. 03-CV-2800-CC (N.D. Ga. Dec. 1, 2005) (33% fee from a $2.825 million); *In re Profit Recovery Group Int'l, Inc. Sec. Litig.*, No. 00-CV-1416-CC (N.D. Ga. May 26, 2005) (33⅓% fee from a $6.75 million settlement fund); *In re Sunterra Corp. Sec. Litig.*, No. 00-cv-79-Orl-28B (M.D. Fla. Apr. 26, 2005) (Antoon, J.) (awarding 33 1/3% of recovery); *In re Clarus Corp. Sec. Litig.*, No. 00-cv-2841-CAP (N.D. Ga. Jan. 6, 2005) (33⅓% fee from a $4.5 million settlement fund); *Cheney v. Cyberguard Corp.*, No. 98-6879-CIV-Gold/Simonton (S.D. Fla. May 7, 2004) (33⅓% fee from a $10 million settlement fund); *Gutter v. E.I. Dupont De Nemours & Co.,* No. 95-2152-CIV-GOLD (S.D. Fla. May 30, 2003) (33⅓% fee from a $77.5 million settlement fund).

case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed

by the client or the circumstances; (8) the amount involved and the results obtained; (9) the

experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the

nature and length of the professional relationship with the client; and (12) awards in similar cases.

946 F.2d at 772 n.3.  The *Camden* court further stated:

> Other pertinent factors are the time required to reach a settlement, whether there
> are any substantial objections by class members or other parties to the settlement
> terms or the fees requested by counsel, any non-monetary benefits conferred upon
> the class by the settlement, and the economics involved in prosecuting a class
> action.  In most instances, there will also be additional factors unique to a particular
> case which will be relevant to the district court's consideration.

*Id.* at 775.  While each of the above factors may be an appropriate consideration, "the factors which

will impact upon the appropriate percentage to be awarded as a fee in any particular case will

undoubtedly vary."  *Id.*

### A.      The Time and Labor Required

The prosecution of this action has been highly focused and time-intensive.  Class Counsel

has expended a total of 3,755.35 hours at a cost of $2,589,313.50 in this litigation:   Berman

DeValerio expended 1,841.80 hours at a cost of $1,159,745.25; Wolf Popper expended 1,228 hours

at a cost of $997,752; and Levi & Korsinsky expended 685.55 hours at a cost of $431,816.25.  *See*

Co-Lead Counsel Decl. at ¶¶ 9, 62.[8] This total reflects the intense effort of counsel, the complexity

---

[8] The total and each firm's lodestar is calculated using the firm's now-existing hourly rates. "The
use of current rates, as opposed to historical rates, compensates counsel for inflation and delay in
receipt of payment. *See Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1096 n.26 (5th
Cir. 1982), *overruled in part on other grounds, Int'l Woodworkers v. Champion Intern.*, 790 F.2d
1174 (5th Cir. 1986). The use of current rates is particularly applicable when legal services are
rendered within a two- or three-year period. *See N.Y. State Ass'n for Retarded Children, Inc. v.
Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983); *Behrens*, 118 F.R.D. at 537.

of the action and the vigor with which each step of the Action was litigated.  The time expended by Class Counsel was necessary to achieve the result obtained.

As discussed above and in Co-Lead Counsel's Declaration, during the past four years, Class Counsel has, among other things: investigated Plaintiffs' claims; conducted extensive and ongoing legal and factual research and drafting in connection with, *inter alia*, the preparation of the Consolidated Amended Class Action Complaint (the "Amended Complaint"); researched, drafted, and filed three oppositions to three separate motions to dismiss filed by the three groups Defendants represented by five separate law firms;[9] consulted with experts; submitted a comprehensive mediation statement prepared for and participated in two global mediation sessions, which took place over three days, with the mediator, Bruce Greer, Defendants, and the parties to other related litigation,[10] and in numerous follow up telephone mediation sessions in order to facilitate settlement of this action; negotiated the global Settlement Agreement with counsel to the three groups of Defendants as well as counsel to the parties in the related litigation; worked with experts to calculate damage and loss estimates; negotiated the proposed Settlement

---

[9] The "Individual Defendants" of John Textor, Jonathan Teaford, and John Nichols, represented by Holland & Knight, Carlton Fields, P.A., and Akerman Senterfitt, repectively; the "Underwriter Defendants" of Roth Capital Partners, LLC and Morgan Joseph Triartisan, LLC, represented by Stroock, Stroock & Lavan LLP; and SingerLewak LLP, DDMG's auditor, represented by Cole, Scott & Kissane, P.A.

[10] These related litigations include:  *Bounty Gain Enters., Inc. v. John C. Textor, et al.*, No. 562014CA001652 (Fla. 19th Cir. Ct.); *State of Fla., Dep't of Econ. Opportunity v. John C. Textor, et al.*, No. 562014CA001652 (Fla. 19th Cir. Ct.); *PBC GP III, LLC, et al. v. John C. Textor, et al.*, No. 562015CA000194 (Fla. 19th Cir. Ct.); *Iroquois Master Fund Ltd., et al. v. John C. Textor, et al.*, No. 651788/2013 (N.Y. Sup. Ct.); *Mountain Partners AG, et al. v. John C. Textor, et al.*, No. 562014CA000670 (Fla. 19th Cir. Ct.); *Flag Holding, LLC v. John C. Textor, et al.*, No. 562013CA003143 (Fla. 19th Cir. Ct.); *Oman Int'l Dev. & Inv. Co. SAOG v. John C. Textor, et al.*, No. 562013CA003347 (Fla. 19th Cir. Ct.); as well as claims asserted by the Creditors Committee and/or the Senior Lenders in the DDMG Bankruptcy Court action, No. 12-12568 (Bankr. Del.).

Agreement for the securities fraud class action with counsel to the three groups of Defendants; and attended to matters related to the administration of the Settlement.[11]  Co-Lead Counsel Decl. at ¶¶ 13-16, 18, 22-27, 29-30, 59.

Indeed, as set forth in detail in the Co-Lead Counsel's Declaration, the successful prosecution of this action involved extensive and complicated investigation, research and briefing. *See* Co-Lead Counsel Decl., ¶¶ 14-15.  For example, the Amended Complaint was the product of intensive factual research, investigative work, and many hours of drafting, which were necessary to allege the facts at issue in the action with the high level of detail required by Federal Rule of Civil Procedure 9(b), the federal securities laws, and the PSLRA.  *See* 15 U.S.C. §§ 78u-4, 77z-1; Co-Lead Counsel Decl., ¶¶ 14-15.  In addition, to produce the briefs submitted to the Court in opposition to the three motions to dismiss the Amended Complaint, Class Counsel devoted significant time to researching relevant case law and drafting persuasive arguments.  *See id.*, ¶¶ 14-15.  The extensive and intensive efforts undertaken by Class Counsel on behalf of the Class therefore strongly support the reasonableness of the fee they request.

**B.     The Economics Involved in Prosecuting the Action and the Contingent Nature of the Representation and The Preclusion of Other Employment**

Class Counsel prosecuted this case on a wholly contingent fee basis and has received no compensation for services rendered in this Action since it was initiated in September 2012.  Thus, the contingency risk in this case was substantial.  Courts have long recognized, particularly in this Circuit, that the attorneys' contingent fee risk is an important factor in determining the fee award. *Cash 4 Titles*, 2012 WL 5290155, at *1 ("It was Class Counsel alone that bore the entire risk of

---

[11] Courts have recognized that time expended in settlement administration should be considered in determining plaintiffs' counsel's fee in a class action of this nature. *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 699 (M.D. Ala. 1988).

this representation – a significant finding in support of the requested fee."); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007) ("[A]ttorneys' risk is 'perhaps the foremost factor' in determining an appropriate fee award.") (citation omitted). *See also Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992) ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."). Indeed, a contingency fee arrangement "often justifies an increase in the award of attorneys' fees." *Sunbeam,* 176 F. Supp. 2d at 1335 (quoting *Behrens*, 118 F.R.D. at 548).

> In *Behrens*, Judge King noted:
>
> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer. Most often, this method of representation is the only means by which a defrauded securities investor can seek assistance from an attorney. Through this relation, the fundamental policies supporting the federal securities laws are promoted. A contingency fee arrangement often justifies an increase in the award of attorneys' fees. This rule helps assure that the contingency fee arrangement endures. If this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort and money, especially in light of the risks of recovering nothing.

118 F.R.D. at 548 (citations omitted).

In a securities fraud action, a contingency fee arrangement has added significance. The federal securities laws are remedial in nature, and, in order to effectuate the statutory purpose of protecting investors and consumers, private lawsuits should be encouraged. *Id.*

In addition, this Action has required a significant financial commitment by Class Counsel who have either expended or obligated themselves to pay $74,606 in out-of-pocket costs to finance this litigation with no guarantee those funds would ever be reimbursed. *See Cash 4 Titles*, 2012 WL 5290155, at *1 ("Class Counsel faced the real risk that, if unable to make a recovery, they would have to bear the entire cost of the litigation, including substantial out-of-pocket expenses"). These costs were expended primarily on consultations with a damages expert, legal research

databases, travel, and mediation fees and expenses.[12]  Class Counsel believes the expenditure of these funds was warranted to develop this case and prepare it for trial.

<strong>C.    The Novelty and Difficulty of the Questions Involved, The Skill Requisite to Perform the Legal Services Properly, and the Results Obtained</strong>

In assessing the quality of work performed and the risk undertaken by Class Counsel, the complexity and magnitude of the litigation must be considered, as well as the difficulty of the questions involved. "Class actions are inherently complex to prosecute because the legal and factual issues are complicated and uncertain in outcome." *Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677-CIV, 2008 WL 649124, at \*15 (S.D. Fla. Jan. 31, 2008).  Here, Plaintiffs "faced all the multi-faceted and complex legal questions endemic to § 10(b) litigation, including proving scienter, materiality, causation and damages." *Ressler*, 149 F.R.D. at 654 (emphasis omitted).  The record demonstrates that this litigation is of a highly complex nature involving thorny, and often unresolved legal issues and difficult assembly of proof.

Class Counsel's fee should also reflect the degree of experience, competence and effort necessary to achieve the proposed Settlement. Class Counsel are experienced securities lawyers with extensive class action expertise. Courts have recognized the importance of providing incentives to experienced counsel who take complex litigation cases on a contingent fee basis, so that those cases can be prosecuted effectively. In assessing the quality of Class Counsel's representation, the Court should consider the quality of the opposition, as well as the standing of Class Counsel. *See Camden*, 946 F.2d at 772 n.3; *Francisco*, 2008 WL 649124, at \*15; *Ressler*,

---

[12] Factors such as the financial burden on counsel and the time demands of litigating a class action of this size and complexity have caused cases to be considered "undesirable." *Garza v. Sporting Goods Props., Inc.*, No. CIV. A. SA–93–CA–108, 1996 WL 56247, at \*33 (W.D. Tex. Feb. 6, 1996); *In re Shell Oil Refinery*, 155 F.R.D. 552, 572 (E.D. La. 1993).

149 F.R.D. at 654. Here, Class Counsel was opposed by an experienced defense team consisting of five separate law firms, included Carlton Fields, Holland & Knight, Akerman Senterfitt, Stroock, Stroock & Lavan, and Cole, Scot & Kissane, all firms with extensive experience in the areas of securities litigation or accountant liability litigation.

Class Counsel achieved a cash settlement of $5,500,000. This recovery – before the deduction of attorneys' fees, costs and expenses, as approved by the Court – amount to 42.2% of the maximum recognized loss per share, Co-Lead Counsel Decl. ¶¶ 3, 26, and is dramatically higher than the median recoveries reported in similar securities class action settlements which range from 11.4% to 18.9%. *See supra* note 4. This result is particularly significant because DDMG was in bankruptcy; D&O Policies were limited to $50 million; over $10 million of the D&O Policies had already been expended on defense costs and were further eroding the pool of available funds; and other individuals and entities, including the State of Florida, City of Port St. Lucie and the Official Committee of Unsecured Creditors on behalf of DDMG estates, had asserted over $100 million in claims subject to the D&O Policies. Co-Lead Counsel Decl. at ¶¶ 19-22. Further, Lead Plaintiffs claims could have been dismissed had this Court found that the allegations of the Complaint failed to allege cognizable misstatements and omissions under federal securities laws or failed to allege scienter. Even if Lead Plaintiffs survived the motions to dismiss in this case, they faced years of additional challenges in obtaining class certification and motions for summary judgment. There was a substantial risk that there would be no insurance proceeds available if Lead Plaintiffs' continued to litigate this case to trial. The result's significance is further increased given the mandatory PSLRA stay of discovery that has been in effect since the litigation was started in 2012. Finally, counsel's vigorous prosecution of the case is shown by the substantial time that Class Counsel incurred in fighting for the Class. Class Counsel's lodestar is

11

far greater than the fee requested. Class Counsel developed the facts of this case that led to the Settlement through investigation, and without the benefit of any discovery from the Defendants.

Pursuant to the Court's Preliminary Approval Order, potential members of the Class have been notified that Class Counsel would apply to the Court for an attorneys' fee award not greater than 33% of the Settlement Fund plus interest, and for reimbursement of their actual, out-of-pocket expenses of up to $90,000, plus interest.  The deadline for filing objections to the Settlement or fee request is November 2, 2016.  As of October 12, 2016, no Class Member has filed an objection. Hughes Decl. ¶ 10.

### D.    The Customary Fee For Similar Cases

Another factor to be considered in arriving at a percentage fee award is the amount of awards in similar cases. "Awards of 30% or more of a settlement fund are not uncommon in § 10(b) common fund cases such as this." *Ressler*, 149 F.R.D. at 655. *See also Camden*, 946 F.2d. at 774-75 ("The majority of common fund fee awards fall between 20% to 30% of the fund . . . [and] an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded").

The requested percentage fee of 33% of the Settlement Fund here is in the range of, and consistent with, the percentage of the common fund awarded to counsel since percentage-of-fund approach was adopted by the Eleventh Circuit in *Camden*.  *See supra* note 8 (collecting Eleventh Circuit cases awarding or approaching awards of one-third of the common fund).

### E.    The Requested Attorneys' Fees Are Consistent With Contingent Fee Arrangements Negotiated in Non-Class Litigation

"The percentage method of awarding fees in class actions is consistent with, and is intended to mirror, practice in the private marketplace where attorneys typically negotiate percentage fee arrangements with their clients." *Pinto*, 513 F. Supp. 2d at 1340. *See also In re Cont'l Ill. Sec.*

12

*Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) ("The object in awarding a reasonable attorney's fee, . . . is to simulate the market."); *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986) ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'"); *In re RJR Nabisco, Inc. Sec. Litig.*, No. 88 Civ. 7905, 1992 WL 210138, at *7 (S.D.N.Y. Aug. 24, 1992) ("what should govern [fee] awards is . . . what the market pays in similar cases").

The present fee request is in line with the average in the private marketplace. "The age-old assumption is that tort lawyers receive a third of their clients' recovery. That 33% figure provides some anchoring for the discussion of class action awards. Indeed, many courts have stated that, regardless of whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." 5 Newberg on Class Actions, § 15:73, at 252 (5th ed. 2015); *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1366 n.36 (S.D. Fla. 2011) (quoting Newberg); *Cash 4 Titles*, 2012 WL 5290155, at *4 ("The requested fee of 33% is at the market rate which the Class could have negotiated at the beginning of this matter. One third of the recovery is considered standard in a contingency fee agreement.").

Class Counsel's efforts were performed, and the result was achieved, on a wholly contingent basis, despite the significant risks, time and expenses. Under these circumstances, it necessarily follows that Class Counsel is entitled to an award of a reasonable fee based on the common fund obtained, that should reflect, inter alia the burdens and risk on Class Counsel and the recovery achieved. Under all of the circumstances present here, a 33% fee is fair and reasonable.

Class Counsel respectfully submits that the fee requested here is consistent with awards in similar cases and is fair and reasonable in light of the substantial benefit conferred on the Class, the risks faced and the quality of the services performed.

**F.      Class Counsel's Expenses Were Reasonably and Necessarily Incurred and Should be Reimbursed**

Class Counsel seeks reimbursement of expenses incurred totaling $74,606, plus interest accrued at the same rate as the Settlement Fund, in prosecuting this Action.  The declarations of Co-Lead Counsel submitted herewith describe the expenses incurred for which reimbursement is sought and the details of these expenses, and are attached as Exhibits 2-3 to the Co-Lead Counsel Declaration.   The Notice advised Class Members that Class Counsel would apply for reimbursement of expenses not to exceed $90,000, plus interest. As of October 12, 2016, there has been no objection to their intent to seek those expenses (moreover, the requested expense reimbursement amount is less than the $90,000 set forth in the Notice).

These expenses were necessary to the effective representation of the Class. [13]  In fact, these expenses were used to pay for Plaintiffs' case investigation (including an investigator who interviewed confidential witnesses necessary for the Amended Complaint), experts, mediation costs, copying, online research, messenger services, postage, long distance telephone and facsimile expenses, transportation and lodging, and other incidental expenses directly related to the

---

[13] Class Counsel "'are entitled to reimbursement of [ ] reasonable and necessary out-of-pocket expenses incurred in the course of activities that benefitted the class' (citing cases 'awarding costs and expenses for, *inter* alia, 'fees for experts, photocopies, travel, online research, translation services, mediator fees, [etc.]'")."   *Morgan v. Public Storage,* No.: 14-cv-21559-Ungaro/Otazo-Reyes, 2016 U.S. Dist. LEXIS 54937, at *46 (S.D. Fla. Mar. 10, 2016); *see also Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354, at *40 (S.D. Fla. Nov. 5, 2015) ("[t]hese costs and expenses consist of, among others, fees for experts, photocopies, travel, online research, translation services, mediator fees");

14

prosecution of this case.   Co-Lead Counsel Decl. at ¶¶ 65-69; the Berman Decl. ¶¶ 9-11, Exhibit C, Wolf Decl. ¶¶ 10-12, and Levi Decl. ¶¶ 9-11, Exhibit C thereof.

Class Counsel respectfully requests that the listed expenses be awarded because they were necessary and appropriate in prosecuting this Action.

### G.   Plaintiffs Should be Granted Service Awards From the Settlement Fund Pursuant to the PSLRA

Class Counsel respectfully requests the Court for an award to each of the Lead Plaintiffs of $5,000, pursuant to 15 U.S.C. §§ 78u-4(a)(4) and 77z-1 for reimbursement of their time and expenses in connection with the prosecution of this Action. Over the course of this Action, they expended dozens of hours to fulfill their duties under the PSLRA. *See* Declarations of Lead Plaintiffs, attached as Exhibits 6-7 of Co-Lead Counsel Decl.

The PSLRA permits a lead plaintiff to seek an award of its "reasonable costs and expenses (including lost wages) directly relating to the representation of the class." 15 U.S.C. § 78u-4(a)(4); *see also* 15 U.S.C. § 77z-1. Courts have awarded PSLRA plaintiffs compensation either for their time (as requested here) or for "services rendered to the class." Courts routinely make such awards where, as here, the plaintiff has documented its claimed costs and expenses. *See, e.g.*, *In re CV Therapeutics, Inc.*, No. C 03-3709 SI, 2007 U.S. Dist. LEXIS 98244, at *5 (N.D. Cal. Apr. 4, 2007) (awarding plaintiff $26,000 for reimbursement for time and expenses under 15 U.S.C. § 78u-4(a)(4)); *In re Transkaryotic Therapies, Inc. Sec. Litig.*, No. 03-10165-RWZ, slip op., at 6-7 (D. Mass. June 3, 2008) (awarding two class representatives over $20,000 each as reimbursement for their time and expenses); *New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 635 (W.D. Ky. 2006) (compensating plaintiffs in consideration of time and expenses); *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 1004 (D. Minn. 2005) (awarding $100,000 collectively to eight plaintiffs for services rendered to class); *Huberman v. Tag-It Pacific Inc.*, No.

CV 05-07352, Order (C.D. Cal. Dec. 7, 2009) (awarding plaintiff $15,000).[14]  It is important that the Court allow reimbursement of lead plaintiffs' costs and expenses because it "encourages participation of Plaintiffs in the active supervision of their counsel." *Varljen v. H.J. Meyers & Co., Inc.,* No. 97 Civ. 6742(DLC), 2000 WL 1683656, at *5 n.2 (S.D.N.Y. Nov. 8, 2000).

In this case, Plaintiffs unquestionably deserve the modest reimbursement award requested. As part of their oversight of the litigation, they regularly conferred with counsel by telephone and by e-mail, and reviewed multiple filings in the litigation, including without limitation, complaints and briefing on Defendants' three motions to dismiss, as well as providing input and oversight in connection with the mediation.  *See* Declarations of Lead Plaintiffs, attached as Exhibits 6-7 of Co-Lead Counsel Decl. This request for compensation is explicitly authorized by the PSLRA to compensate Plaintiff for the "reasonable costs and expenses (including lost wages) directly relating to" their representation of the Class in this Action. *See* 15 U.S.C. §§ 78u-4(a)(4) and 77z-1. It is eminently reasonable, therefore, that Lead Plaintiffs receive the modest amount requested as compensation for their time.

---

[14] *See also In re Synovus Fin. Corp.*, No. 1:09-cv-01811-WCO, 2014 U.S. Dist. LEXIS 190227, at *6 (N.D. Ga. Nov. 18, 2014) ("The Court finds that, pursuant to 15 U.S.C. § 78u-4(a)(4), an award of $8,042.01 to Labourers' Pension Fund of Central and Eastern Canada and $7,158.25 to Sheet Metal Workers' National Pension Fund is appropriate"); *McPhail v. First Command Fin. Planning, Inc.*, No. 05cv179-IEG-JMA, 2009 U.S. Dist. LEXIS 26544, at *24-25 (S.D. Cal. Mar. 30, 2009) (awarding approximately $30,000 to the class representatives); *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (approving a reimbursement to the class representative of $40,000); *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1049 (N.D. Cal. 2007) (awarding approximately $30,000 to lead plaintiffs for reimbursement of their costs and expenses (including lost wages)); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) (awarding $55,000 each to two class representatives).  *See generally Legg v. Lab. Corp. of Am. Holdings,* No. 14-61543-CIV-ROSENBERG, 2016 U.S. Dist. LEXIS 122695, at *11 (S.D. Fla. Feb. 18, 2016) ("Class Representative …is hereby compensated in the amount of $10,000 for his efforts in this case"); *TD Bank*, 2015 U.S. Dist. LEXIS 150354, at *25-6; *Fuller v. Imperial Holdings*, No. 11-81184-CIV-MARRA (S.D. Fla. Dec. 16, 2013) (ECF No. 95) (awarding lead plaintiff compensatory award of $10,000).

The notice approved by the Court advised class members that Plaintiff would seek up to $5,000 for each of the Lead Plaintiffs for their reasonable costs and expenses directly relating to its representation of the Class.  *See* Preliminary Approval Order Ex. A-1, at 2.  As of October 12, 2016, not a single member of the Class has objected to this request.  Hughes Decl. Ex. A at 1; ¶¶ 10-11.  In view of their dedication and given the extensive time spent on the case, and factoring in its lost wages, Plaintiffs' request for reimbursement of $5,000 each in time and expenses is conservative, reasonable, and should be granted.

## IV.   CONCLUSION

As detailed above, and for the reasons set forth in the Co-Lead Counsel Declaration, Plaintiffs and Class Counsel respectfully requests that the Court (1) award attorneys' fees from the Settlement Fund to Class Counsel in the amount of $1,815,000, plus interest; (2) reimburse Class Counsel for their expenses incurred in litigation this Action in the amount of $74,606, plus interest; and (3) reimburse Plaintiffs for their time and expenses incurred in litigating this Action in the amount of $5,000 each.

DATED: October 21, 2016                    **BERMAN DEVALERIO**

/s/Jay W. Eng _____
Jay W. Eng, Esq.
Fla. Bar No. 146676
Email: jeng@bermandevalerio.com
3507 Kyoto Gardens Drive, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 835-9400
Facsimile: (561) 835-0322

Patrick A. Egan, Esq.
*Admitted Pro Hac Vice*
Email: pegan@bermandevalerio.com
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194

17

**WOLF POPPER LLP**
Marian P. Rosner, Esq.
Email: mrosner@wolfpopper.com
Patricia I. Avery, Esq.
*Admitted Pro Hac Vice*
Email: pavery@wolfpopper.com
Joshua W. Ruthizer, Esq.
Fla. Bar No. 92528
Email: jruthizer@wolfpopper.com
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600
Facsimile: (212) 486-2093

**LEVI & KORSINSKY LLP**
Nicholas I. Porritt, Esq.
*Admitted Pro Hac Vice*
Email: nporritt@zlk.com
1101 30th Street, NW, Suite 115
Washington, DC 20007
Telephone: (202) 524-4290
Facsimile: (202) 333-2121

*Co-Lead Counsel for Court-Appointed Lead
Plaintiffs and Class Representatives*

18

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing was served by the following methods on the following dates on all counsel or parties of record on the Service List below.

By:  /s/ Jay W. Eng_____
Jay W. Eng, Esq.

<u>**SERVICE LIST**</u>

By and through the Southern District of Florida's CM/ECF system on October 21, 2016 upon:

| | |
|---|---|
| Tracy Nichols, Esq.<br>Email: tracy.nichols@hklaw.com<br>Stephen Patrick Warren, Esq.<br>Email: Stephen.warren@hklaw.com<br>Holland & Knight<br>701 Brickell Ave., Suite 3000<br>Miami, FL 33131<br>Tel: (305) 374-8500<br>Fax: (305) 789-7799<br>*Counsel for Defendant John C. Textor* | Brian Paul Miller, Esq.<br>Email: brian.miller@akerman.com<br>Samantha J. Kavanaugh, Esq.<br>Email: Samantha.kavanaugh@akerman.com<br>Akerman Senterfitt<br>SunTrust International Center<br>1 S.E. 3rd Ave., 25th Floor<br>Miami, FL 33131<br>Tel: (305) 374-5600<br>Fax: (305) 374-5095<br>*Counsel for Defendant John M. Nichols* |
| Brian C. Frontino, Esq.<br>Email: bfrontino@stroock.com<br>Brendan S. Everman, Esq.<br>Email: beverman@stroock.com<br>Stroock & Stroock & Lavan LLP<br>200 South Biscayne Blvd. Suite 3100<br>Miami, FL 33131-5323<br>Tel: (305) 358-9900<br>Fax: (305) 789-9302<br>John R. Loftus, Esq.<br>Email: jloftus@stroock.com<br>Julia B. Strickland, Esq.<br>Email: jstrickland@stroock.com<br>Stroock & Stroock & Lavan LLP<br>2029 Century Park East, Suite 1800<br>Los Angeles, CA 90067-3086<br>Tel: (310) 556-5800<br>Fax: (310) 556-5959<br>*Counsel for Roth Capital Partners, LLC and Morgan Joseph TriArtisan, LLC* | Steven Jeffrey Brodie, Esq.<br>Email: sbrodie@carltonfields.com<br>Carlton Fields, P.A.<br>100 Southeast Second Street, Suite 4200<br>Miami, Florida 33131<br>Tel: (305) 530-0050<br>Fax: (305) 530-0055<br>*Counsel for Defendant Jonathan Teaford* |

19

| | |
|---|---|
| Richard P. Cole<br>Richard.Cole@csklegal.com<br>Jonathan Vine<br>Jonathan.Vine@csklegal.com<br>Cody German<br>Cody.German@csklegal.com<br>Cole, Scott & Kissane, P.A.<br>9150 South Dadeland Blvd., Suite 1400<br>Miami, FL 33156<br>Telephone: (305) 350-5300<br>Fascimile: (305) 373-2294<br>*Counsel for Defendant SingerLewak LLP* | Laurence Matthew Rosen<br>Email: lrosen@rosenlegal.com<br>The Rosen Law Firm<br>275 Madison Avenue, 34th Floor<br>New York, NY 10016<br>Tel: (212) 686-1060<br>Fax: (212) 202-3827<br>*Counsel for Plaintiff Frank Cacella and Movants the Digital Domain Investor Group (James and Suzanne Mason, Eric Michael Harkins and Arthur M. Packard)* |
| Julie Prag Vianale<br>Email: jvianale@vianalelaw.com<br>Vianale & Vianale<br>2499 Glades Road, Suite 112<br>Boca Raton, FL 33431<br>Telephone: (561) 392-4750<br>Facsimile: (561) 392-4775<br>*Counsel for Movants Marilyn Larsen and Frank LoVerso* | Kenneth G. Gilman<br>Email: kgilman@gilmanpastor.com<br>Gilman Law LLP<br>3301 Bonita Beach Road, Suite 307<br>Bonita Springs, FL 34134<br>Telephone: (239) 221-8301<br>Facsimile: (239) 676-8224<br>*Counsel for Movants The Jacobson/Kraft Group (Robert Jacobson and Bernard Kraft)* |
| Brandon Thomas Grzandziel<br>Email: bgrzandziel@saxenawhite.com<br>Lester Rene Hooker<br>Email: lhooker@saxenawhite.com<br>Joseph E. White, III<br>Email: jwhite@saxenawhite.com<br>Saxena White PA<br>2424 N Federal Highway, Suite 257<br>Boca Raton, FL 33431<br>Tel: (561) 394-3399<br>Fax: (561) 394-3082<br>*Counsel for Plaintiff Nathan Wilson* | |